# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1037

_____

United States of America,      *
     *
        Appellee,     *
     *    On Appeal from the United
     v.      *    States District Court for the
     *    Southern District of Iowa.
Ramona Cunningham,     *
     *
       Appellant.     *

_____

Submitted: October 23, 2009
Filed:  February 5, 2010

_____

Before BYE, BEAM, and SHEPHERD, Circuit Judges.

_____

BEAM, Circuit Court Judge.

Ramona Cunningham pled guilty to one count of conspiracy to commit fraud or misapplication concerning federal funds under the Workforce Investment Act in violation of 18 U.S.C. § 371, two counts of fraud or misapplication concerning federal funds under the Workforce Investment Act in violation of 18 U.S.C. § 665(a), four counts of fraud or misapplication concerning a program receiving federal funds in violation of 18 U.S.C. § 666(a)(1)(A), and one count of obstruction of an investigation or inquiry concerning federal funds under the Workforce Investment Act in violation

of 18 U.S.C. § 665(c).  The district court[1] sentenced Cunningham to eighty-four months' imprisonment.  Cunningham appeals that sentence, challenging the district court's application of certain sentencing enhancements and claiming that the overall sentence is unreasonable.  We affirm.

## I.    BACKGROUND

Cunningham worked in various capacities at the Central Iowa Employment and Training Consortium (CIETC)–a job employment, training and education organization funded primarily through grants from federal, state, and local governments–from 1984 to 2006.  From 1995 to 2006, Cunningham served as the agency's Chief Executive Officer/Executive Director (CEO).  The fraud alleged in this case concerned the proper (or, rather, improper) allocation of the time of CIETC employees; the billing of various local, state, and federal entities for those employees' time; and misapplication of funds CIETC received from the funding entities through payment of excessive compensation to CIETC executive staff.  The government investigated this alleged fraud from January 2003 until around April 2006.

The executive staff of CIETC was comprised of Cunningham (CEO), John Bargman (Chief Operating Officer, or COO), and Karen Tesdell (Chief Accountant).  CIETC's Local Officials Board was comprised of Archie Brooks and Dan Albritton, among others.  Also relevant to the investigation was the Iowa Workforce Development (IWD), which oversaw CIETC's administration of certain programs.  Jane Barto was the Deputy Director of IWD.  Each of these individuals were named in the resulting indictments following the above-mentioned investigation.  As CEO of CIETC, Cunningham's responsibilities included, in addition to other duties, coordination of staff and consultant services; preparing and administering the annual

---

[1]The Honorable Robert W. Pratt, Chief United States District Judge for the Southern District of Iowa.

work program and budget; employing, retaining, removing and setting the salaries of all personnel; representing CIETC in the absence of the board chairperson; and exercising discretion in the interpretation of policies and procedures of CIETC.

At all times material to the government's investigation, CIETC's annual budget ranged from approximately $5,000,000 to $7,000,000, and several government agencies oversaw CIETC's operations. Although the investigation was lengthy and detailed, the alleged fraud that formed the basis for the charges in this case generally concerned the administration of grant funds received by CIETC that were improperly obtained and used for inflated salaries and exorbitant bonuses for certain individuals, including Cunningham. For example, during CIETC's fiscal years 2004 through 2006, Cunningham, Bargman and Tesdell were paid a combined total of $2,058,862 in compensation and the government's investigation determined that of that total, $1,074,509 were non-allowable monies used for excessive and unreasonable staff compensation.

Following Cunningham's guilty plea to eight of the thirty counts contained in the superseding indictment, and after conducting the sentencing hearing, the district court applied certain enhancements at sentencing based upon its factual findings. The court sentenced Cunningham to eighty-four months, twenty-four months below the low end of the court's calculation of the suggested Guidelines range of 108 to 135 months. The facts relevant to each of those enhancements are discussed below.

## II. DISCUSSION

Cunningham argues the district court committed procedural error by applying certain sentencing enhancements under the Guidelines and substantive error for when it failed to give sufficient consideration to certain sentencing factors under 18 U.S.C. § 3553(a), resulting in the imposition of an unreasonable sentence. Specifically, Cunningham contends the district court erred by applying a two-level sentencing

enhancement for obstruction of justice, a four-level sentencing enhancement for her aggravating role in the offense as a leader or organizer of criminal activity and a two-level sentencing enhancement because the number of victims in her case was more than ten but less than fifty. She also contends that in light of the nature and characteristics of her offense, her personal history and sentences imposed on co-defendants in this prosecution, the district court should have given her a substantially lighter sentence.

> On appeal, we will review a sentence for an abuse of discretion, giving due deference to the district court's decision. First, we will ensure that the district court did not commit a significant procedural error, such as miscalculating the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain why a sentence was chosen. If the district court's decision is procedurally sound, then we will consider the substantive reasonableness of the sentence imposed, applying an abuse-of-discretion standard.

United States v. Zastrow, 534 F.3d 854, 855 (8th Cir. 2008) (internal quotations omitted). "A sentence within the Guidelines range is accorded a presumption of substantive reasonableness on appeal." United States v. Robinson, 516 F.3d 716, 717 (8th Cir. 2008).

## A.    Obstruction of Justice

Cunningham first argues that the district court committed procedural error in applying the advisory Guidelines when it imposed a two-level enhancement under United States Sentencing Guidelines (U.S.S.G.) § 3C1.1 for obstructing or impeding the administration of justice. We give great deference to a district court's decision to impose an obstruction of justice enhancement, reversing only when the district court's findings are insufficient. United States v. Craft, 478 F.3d 899, 901 (8th Cir. 2007). "The district court must find the predicate facts supporting an enhancement for

obstruction of justice by a preponderance of the evidence, and we review those findings for clear error." United States v. Montes-Medina, 570 F.3d 1052, 1061 (8th Cir. 2009).

Cunningham claims that this enhancement was applied for two reasons: Cunningham ordered the destruction of evidence during an audit and failed to report her Iowa Public Employees' Retirement System (IPERS) assets in her financial statement during the course of the presentence investigation. Regardless of whether or not Cunningham failed to disclose her IPERS account, a fact Cunningham claims was inadvertently omitted if at all, the testimony of Traci Dow-Wyatt, a special agent of the FBI involved in the CIETC investigation, regarding Cunningham's direction to destroy certain documents supports the enhancement. The Presentence Investigation Report (PSR) indicated that prior to an auditor's visit, Cunningham ordered the destruction of time records that would have shown inconsistencies in reporting practices of employees–conduct directly relevant to the pending investigation. This was corroborated at sentencing through Dow-Wyatt's testimony, who recalled statements of others that Cunningham either directed them to dispose of a number of time cards of individual CIETC employees or who were otherwise involved in the destruction or alteration of CIETC business records. The district court's reliance upon this evidence is sufficient to support the enhancement.

## B. Role in the Offense as Leader or Organizer

Under the Guidelines, a defendant's sentence can be enhanced two to four offense levels if the defendant's role in the offense was an aggravating one. U.S.S.G. § 3B1.1(a-c). The "'adjustment for being an organizer or leader is intended to reflect relative responsibility compared to other participants in the crime.'" United States v. Villareal-Amarillas, 454 F.3d 925, 931 (8th Cir. 2006) (quoting United States v. Rodriguez, 112 F.3d 374, 377 (8th Cir. 1997)).

Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.

U.S.S.G. § 3B1.1 cmt. n.4. The PSR suggested a four-level increase under section 3B1.1, which the district court applied. We review for clear error the district court's factual findings underlying the imposition of a sentencing enhancement regarding a defendant's role in the offense. United States v. Davis, 583 F.3d 1081, 1097 (8th Cir. 2009).

The entirety of Cunningham's argument on this issue is that "clearly" Bargman, not Cunningham, was the organizer and leader of this criminal activity. Cunningham claims that prior to Bargman's arrival at CIETC, she received one or two salary increases a year, attributable to annual raises or raises received because of reassignment, reclassification or additional responsibilities. It was not until 2000, the year Bargman began his employment with CIETC, that Cunningham began to receive numerous bonuses. She further highlights that Bargman supervised key employees and directed how employees were to bill their time to certain programs in excess of time worked, a key factor in the fraud scheme. And, Cunningham claims it was Bargman who managed the assets, property and activities of the criminal activity.

The government responds that "water doesn't run uphill." That is, without Cunningham none of it could have happened. The district court agreed and did not clearly err in doing so. Indeed, the district court acknowledged Bargman's major role in this operation and found that *both* Cunningham and Bargman were "equally culpable," regardless of the fact that the criminal activity did not start until after

Bargman started at CIETC. Cunningham's role as Executive Director of CIETC and associated responsibilities are undisputed. We thus affirm the district court's application of the role enhancement.

### C.  Number of Victims

We also find no clear error in the district court's finding that Cunningham's illegal conduct involved more than ten and less than fifty victims. U.S.S.G. § 2B1.1(b)(2)(A); United States v. Jenkins-Watts, 574 F.3d 950, 961 (8th Cir. 2009) (standard of review). Governmental entities can be considered victims for purposes of this sentencing enhancement. United States v. Reyes, 908 F.2d 281, 288-89 (8th Cir. 1990).

Cunningham argues that at most there are eight victims including the State of Iowa, Department of Health and Human Services, Department of Labor, Creative Vision, Polk County, the federal government, and the Workforce Investment Act and Promise Jobs programs. The PSR stated that the offense involved ten or more but less than fifty victims and calculated a two-level increase accordingly. The victims, as stated in the PSR, included the nine governmental agencies (the city of Des Moines and eight counties in Iowa) that comprised CIETC, i.e., the entities that funded CIETC's programs, and the State of Iowa as well. In its calculation, the district court accounted for the State of Iowa, nine central Iowa counties,[2] the City of Des Moines, and the United States Government, which the district court treated as one entity rather than a compilation of its various affected agencies. Without further scrutiny into additional entities that might be noted, and acknowledging that there are only eight

_____

[2]We recognize that the district court's statement regarding the "nine" affected counties is erroneous but correction is unnecessary, as there are more than ten victims regardless.

county victims here, the district court's calculation stands and satisfies the "ten or more" required for the enhancement.

### D.    Substantive Unreasonableness

Having determined that the sentence is procedurally sound, we now consider the substantive reasonableness of the sentence imposed, applying an abuse-of-discretion standard.    Zastrow, 534 F.3d at 855.    We judge the substantive reasonableness of the sentence with reference to the factors enumerated in 18 U.S.C. § 3553(a).  United States v. Wahlstrom, 588 F.3d 538, 547 (8th Cir. 2009).  Here, the district court calculated an advisory Guidelines range of 108 to 135 months and varied downward, imposing an eighty-four month sentence, following its consideration of the section 3553(a) factors.  Cunningham does not claim that the district court failed to consider the appropriate factors, but rather that those factors warranted a greater downward variance in this case.

Cunningham focuses on the first of the section 3553(a) factors, reviewing the nature and circumstances of the offense and Cunningham's history and characteristics. A large portion of Cunningham's brief is dedicated to the argument that Cunningham should not be punished for her conduct because the transparency of the CIETC operation somehow makes her less culpable, or at least deserving of a less severe punishment as a result.  She highlights the public nature of CIETC, which involved oversight by multiple agencies and groups of individuals, many of whom conducted audits and reviews that were communicated to Cunningham.  Cunningham argues that because there was no mention of wrongdoing as relevant to the current charges in any report or other communication following these reviews, she should not be penalized for her reliance upon them.  She likewise claims that she relied upon Bargman (who, she points out, unfairly received a much lighter sentence following his own guilty plea to a two-count information) and his experience and knowledge of the laws, as if such reliance serves as an explanation for her own failures to responsibly act in accordance

with her duties as Executive Director of CIETC, and justifies a shorter sentence. Finally, as to her own history, Cunningham highlights her own unfortunate past and the many obstacles she overcame to succeed at CIETC. She was effective in many aspects of her job at CIETC, as is highlighted in her brief. And, she details the great backlash she experienced following the public unveiling of the wrongdoing.

The district court conducted a lengthy and thorough colloquy regarding its section 3553(a) analysis as relevant to the facts of this case. The court discussed the appropriate considerations under section 3553(a), but stated that the seriousness of this offense was a large part of its consideration. The court sentenced Cunningham twenty-four months below the suggested advisory Guidelines range–a sentence amply supported by the record. We conclude that the sentence is not substantively unreasonable and that the district court did not abuse its discretion.

## III.   CONCLUSION

For the reasons stated herein, we affirm.

_____