# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2988
_____

United States of America,           *
                                     *
            Appellee,                *
                                     *
      v.                             *
                                     *
Jose M. Alvarado,                    *
                                     *
            Appellant.               *


_____                    Appeals from the United States
                               District Court for the
No. 09-3160                    Western District of Arkansas.
_____

United States of America,           *
                                     *
            Appellee,                *
                                     *
      v.                             *
                                     *
Juan Carrillo, also known as         *
Juan Corona-Carmona,                 *
                                     *
            Appellant.               *

_____

Submitted: April 16, 2010
Filed: August 5, 2010

_____

Before RILEY, Chief Judge, COLLOTON and BENTON, Circuit Judges.
_____

RILEY, Chief Judge.

A grand jury indicted Jose M. Alvarado, Juan Carrillo, and twelve other defendants on multiple counts, including conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii), and 846 (Count I); and conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(h) (Count II). Alvarado pled guilty to Count I, and Carrillo pled guilty to Count II. Alvarado filed a motion to withdraw his guilty plea, which the district court[1] denied. The district court sentenced Alvarado to 120 months imprisonment, and Carrillo to 240 months imprisonment. Alvarado appeals the district court's denial of his motion to withdraw his guilty plea. Alvarado and Carrillo both appeal their sentences. We affirm in each case.

## I.    BACKGROUND

### A.    Alvarado's Guilty Plea and Sentencing

On February 2, 2009, Alvarado pled guilty to Count I pursuant to a written plea agreement. On February 23, 2009, Alvarado filed a motion to withdraw his guilty plea. In an amended motion, Alvarado claimed (1) two days before Alvarado pled guilty, one of his co-defendants assaulted him in jail, and he lost confidence in the government's ability to protect him; (2) Alvarado wanted to maintain his innocence at his change of plea hearing, but was afraid to do so because of the beating and the government's inability to protect him; (3) Alvarado obtained new evidence later on the day of his plea when he encountered a co-defendant in jail who stated he had knowledge of threats Carrillo made against Alvarado and his family; (4) the beating and resulting fear of future violence rendered his plea involuntary; (5) Alvarado

_____

[1]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

believed he was innocent of voluntarily participating in a conspiracy; and (6) Alvarado maintained his innocence until January 25, 2009, when he agreed to plead guilty.

The district court held a hearing on Alvarado's motion to withdraw his guilty plea. Alvarado's counsel provided a lengthy opening statement, setting forth all of the reasons Alvarado should have been permitted to withdraw his guilty plea, largely mirroring the reasons set forth in Alvarado's motion to withdraw. Alvarado's counsel also explained the government had tendered two potential plea agreements, but because a storm was coming and the plea hearing was scheduled for the following Monday, counsel decided which plea agreement to use, brought the plea agreement to Alvarado in the jail, and had Alvarado sign the agreement without the benefit of a translator. Alvarado's counsel stated he returned to the jail with a translator on the Saturday before the change of plea hearing and went over the plea agreement with Alvarado for the first time. Alvarado's counsel asserted Alvarado informed him of the beating Alvarado sustained in jail, but counsel decided not to raise it at the change of plea hearing. Alvarado's counsel maintained, after the plea hearing, Alvarado met a witness who could support Alvarado's claim of innocence or excuse. Between ten and fourteen days after the plea hearing, Alvarado notified counsel he wanted to withdraw his guilty plea. Alvarado's counsel filed the motion to withdraw the plea one week later, "giv[ing Alvarado] a chance to sit on it before [counsel] filed a motion."

The district court treated Alvarado's counsel's opening statement as a proffer. The district court found there was no reason to proceed with a hearing because, even if Alvarado could prove everything set forth in his proffer, none of the offered reasons provided a sufficient basis for a plea withdrawal. The district court then denied Alvarado's motion to withdraw his guilty plea.

During Alvarado's sentencing hearing, Alvarado argued for the first time that he was eligible for safety valve relief pursuant to United States Sentencing Guidelines (U.S.S.G. or Guidelines) § 5C1.2. The district court did not explicitly address the newly raised safety valve issue, and Alvarado did not request a ruling. The district court sentenced Alvarado to 120 months imprisonment, five years supervised release, and a $15,000 fine.

### B. Carrillo's Guilty Plea and Sentencing

Carrillo cooperated with the government and pled guilty to conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). Based upon Carrillo's total offense level of 43 and criminal history category of III, the advisory Guidelines recommended a sentence of life imprisonment. The money laundering offense carried a 20-year maximum sentence, creating a Guidelines range of 240 months imprisonment. The government filed an amended motion for a 12-month downward departure from the 240-month sentencing range due to Carrillo's substantial assistance, pursuant to U.S.S.G. § 5K1.1. During Carrillo's sentencing hearing, the district court granted the government's motion for a downward departure, giving Carrillo a Guidelines range of 228 to 240 months imprisonment. The district court considered the significant benefit Carrillo received from the government's charging decision, and each of the 18 U.S.C. § 3553(a) factors, and determined a sentence at the high end of the Guidelines range was appropriate. The district court sentenced Carrillo to 240 months imprisonment, three years supervised release, and a $50,000 fine.

## II. DISCUSSION
### A. Alvarado's Claims on Appeal

Alvarado contends the district court erred by (1) failing to hold a hearing on, and failing to grant, Alvarado's motion to withdraw his guilty plea; (2) enhancing Alvarado's sentence for obstruction of justice under U.S.S.G. § 3C1.1; and (3) failing

to rule on, and failing to grant, Alvarado's request for safety valve relief pursuant to 18 U.S.C. § 3553(f)(5) and U.S.S.G. § 5C1.2.

### 1. Motion to Withdraw Guilty Plea

"We review both the denial of a motion to withdraw and the refusal to hold a hearing under the abuse of discretion standard." United States v. Morrison, 967 F.2d 264, 268 (8th Cir. 1992). Under Fed. R. Crim. P. 11(d)(2)(B), after a court accepts a guilty plea, a defendant may still withdraw the plea before sentence is imposed if "the defendant can show a fair and just reason for requesting the withdrawal." See United States v. Bastian, 603 F.3d 460, 464 (8th Cir. 2010). The trial court can deny a motion to withdraw a guilty plea without holding an evidentiary hearing "if the allegations in the motion are inherently unreliable, are not supported by specific facts or are not grounds for withdrawal even if true." Morrison, 967 F.2d at 267-68 (quoting United States v. Thompson, 906 F.2d 1292, 1299 (8th Cir. 1990)). "The plea of guilty is a solemn act not to be disregarded because of belated misgivings about [its] wisdom." Id. (quoting United States v. Woosley, 440 F.2d 1280, 1281 (8th Cir. 1971)). "When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, 'the occasion for setting aside a guilty plea should seldom arise.'" Id. (quoting United States v. Rawlins, 440 F.2d 1043, 1046 (8th Cir. 1971)).

The district court granted Alvarado's request for a hearing on his motion to withdraw his guilty plea. During the hearing, Alvarado's counsel gave a detailed opening statement listing the reasons Alvarado should have been permitted to withdraw his plea, and providing a description of the evidence counsel intended to present in support of Alvarado's motion. After opening statements, the district court concluded there was no need to proceed with the evidentiary portion of the hearing because, even if all of the allegations in Alvarado's opening statement were true, the allegations did not provide a sufficient basis for withdrawal of his plea.

The district court confirmed, except for the alleged conversation Alvarado had with one of his co-defendants, all of the allegations Alvarado raised in support of his motion to withdraw were known to Alvarado and his attorney before Alvarado pled guilty. Alvarado's counsel conceded he and Alvarado made a "conscious, knowing decision" not to bring the information to the court's attention. The district court then recounted Alvarado's plea hearing, emphasizing Alvarado (1) told the court he was pleased with his counsel then and now, (2) stated he understood and signed the plea agreement which had been translated from English to Spanish, (3) indicated no one had threatened or forced him to sign the agreement, (4) advised the court the plea agreement was complete and the factual basis was true and correct, (5) stated he understood the potential punishment he could receive, (6) indicated he did not have any questions, and (7) pled guilty to the offense. The court was troubled that Alvarado was claiming "there were all sorts of reasons why [Alvarado] was, and is, not guilty of the offense to which he pled."

The district court responded to all of Alvarado's proffered reasons for withdrawal. First, the court considered Alvarado's assertion that he consistently maintained his innocence until he decided, on his own accord, to plead guilty to the offense. The district court found it was not unusual for a defendant to maintain his innocence until deciding to plead guilty. The district court also discussed Alvarado's explanation for his possession of scales and a crystalline substance used to cut methamphetamine. The district court found it was not unusual for a defendant to have an innocent explanation for some of the evidence which would otherwise seem to support guilt.

Alvarado also denied he confessed to the crime. The district court found, even if Alvarado had raised this at the plea hearing, it did not constitute compelling evidence of actual innocence, and would not have resulted in the court's denial of Alvarado's guilty plea. Instead, the court determined the alleged confession might have been inadmissible if there had been a trial. The district court cited to other

evidence supporting Alvarado's guilt, and concluded Alvarado's allegations did not suggest Alvarado was actually innocent.

Next, the district court discussed Alvarado's claim that after the plea hearing, Alvarado returned to his holding cell, where Alvarado met one of his co-defendants. Alvarado alleged his co-defendant knew Carrillo made threats against Alvarado and his family in an effort to receive payment for drugs. The district court explained this alleged conversation did not support Alvarado's claim of innocence.

The district court also examined Alvarado's assertion that he was assaulted while incarcerated. The district court pointed out Alvarado had decided to plead guilty to the offense on January 25, 2009, signed a written plea agreement on January 26, 2009, and was not assaulted until January 30, 2009. The district court proposed that this time-line demonstrates the assault did not cause Alvarado to plead guilty. While Alvarado contends the plea agreement was not fully translated to him on January 26, 2009, the court believed Alvarado fully understood the contents of the plea agreement and the factual basis during the plea hearing. The court then determined it would be inappropriate to set aside a guilty plea, after Alvarado earlier represented to the court that he had not been threatened, forced, or coerced to plead guilty, simply because Alvarado had a change of heart.

The court also was concerned that weeks had passed between the date of Alvarado's guilty plea and the date counsel filed a motion to withdraw. Although Alvarado allegedly spoke to his co-defendant on the same date as the plea hearing, Alvarado did not notify his attorney he wished to withdraw his guilty plea until two weeks later. Alvarado's counsel waited "several days" before filing a motion to withdraw to see if Alvarado would change his mind again. The court reasoned, if Alvarado believed this conversation to be a basis for withdrawing his guilty plea, he likely would have contacted counsel immediately. The court then declared, "a change of heart is just not sufficient to set aside a Plea Agreement that is undertaken by this

Court under the circumstances . . . described." After discussing each of Alvarado's proffered justifications for withdrawal, the district court resolved that Alvarado's stated reasons, even if true, did not support a finding of actual innocence, nor did they provide a sufficient basis to permit Alvarado to withdraw his guilty plea. Thus, the district court found it would be unnecessary to continue with the evidentiary hearing, and denied Alvarado's motion to withdraw.

The district court did not abuse its discretion when it decided not to proceed with the evidentiary portion of the plea withdrawal hearing. See Morrison, 967 F.2d at 268 (standard of review). The court was not required to continue with the hearing after it determined that all of Alvarado's allegations, even if true, were not grounds for a plea withdrawal. See id. Likewise, the district court did not abuse its discretion when it denied Alvarado's motion to withdraw his guilty plea. Alvarado had the burden to establish a fair and just reason for the withdrawal, and he plainly did not meet that burden in this case. See Bastian, 603 F.3d at 464; Morrison, 967 F.2d at 268 ("An assertion of innocence—even a 'swift change of heart after the plea'—does not constitute a 'fair and just reason' to grant withdrawal."). We affirm the district court's decision to terminate the evidentiary hearing and to deny Alvarado's motion to withdraw his guilty plea.

### 2. Obstruction of Justice

Alvarado argues the district court erred in imposing a two-level sentencing enhancement under U.S.S.G. § 3C1.1 for obstructing or impeding the administration of justice. A district court must find the predicate facts supporting such an enhancement for obstruction of justice by a preponderance of the evidence. United States v. Cunningham, 593 F.3d 726, 730 (8th Cir. 2010). We give great deference to the district court's decision to enhance a sentence for obstruction of justice, and we review the district court's factual findings pertaining to the enhancement for clear error. Id.

Guidelines Section 3C1.1 states,

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by **2** levels.

Application Note 4 to U.S.S.G. § 3C1.1 provides examples of conduct triggering the enhancement. These examples include "committing, suborning, or attempting to suborn perjury"; "producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding"; and "providing materially false information to a judge or magistrate." U.S.S.G. § 3C1.1 cmt. n.4.

Before Alvarado's sentencing hearing, he filed a written objection to the presentence investigation report's (PSR) recommendation that Alvarado's offense level should be increased two levels for obstruction of justice. During Alvarado's sentencing hearing, the district court thoroughly considered Alvarado's objection. The district court found Alvarado had "represented to the Court that the assertions that he had made under oath at the plea colloquy were simply false," and he "clearly falsely stated that he was innocent, that he hadn't done what was alleged, [and] that he didn't realize what was transpiring." The district court then overruled Alvarado's objection to the obstruction of justice enhancement, finding "the addition of the points for obstruction of justice [wa]s appropriate."

The district court did not clearly err in finding Alvarado's conduct amounted to obstruction of justice under U.S.S.G. § 3C1.1. During Alvarado's initial change of plea hearing, Alvarado acknowledged he was guilty of conspiracy to distribute methamphetamine, and Alvarado admitted a series of facts which supported his guilt.

Later, Alvarado attempted to withdraw his guilty plea, and he made statements to the court which directly contradicted the sworn statements Alvarado made during his change of plea hearing. Alvarado also signed a sworn affidavit which contradicted his prior sworn statements and the undisputed facts in the PSR. When a defendant "testifies falsely under oath in regard to a material matter and does so willfully rather than out of confusion or mistake," the defendant is subject to a two-level enhancement for obstruction of justice. United States v. Mendoza-Gonzales, 363 F.3d 788, 796 (8th Cir. 2004). The district court did not clearly err in finding Alvarado's conduct sufficient to qualify for the enhancement.

### 3. Safety Valve Relief

Alvarado maintains the district court erred by failing to rule on, and failing to grant, Alvarado's request to be sentenced pursuant to the safety valve provision in 18 U.S.C. § 3553(f)(5) and U.S.S.G. § 5C1.2.

> Under the "safety valve" exception to statutory minimum sentences, a drug defendant may be given a more lenient sentence within the otherwise applicable guidelines range if, among other things, the defendant "provide[s] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."

United States v. Romo, 81 F.3d 84, 85 (8th Cir. 1996) (quoting 18 U.S.C. § 3553(f)(5)). To qualify for the safety valve exception, a defendant must disclose all information about his involvement in the crime, including the identities and participation of others. Id. The defendant has the burden to demonstrate he has provided the government "truthful information and evidence about the relevant crimes before sentencing." Id. at 85-86.

When Alvarado testified at his initial change of plea hearing, and later signed an affidavit contradicting his plea testimony, Alvarado gave the district court two

-10-

inconsistent sworn statements. If the district court believed the second sworn statement to be a truthful disclosure of all the information Alvarado had pertaining to the conspiracy, the district court could have granted safety valve relief on that basis. See United States v. Gomez-Perez, 452 F.3d 739, 741-42 (8th Cir. 2006). The district court did not believe Alvarado's second statement was truthful, and Alvarado did not meet his burden of showing, by a preponderance of the evidence, that he provided a complete and truthful disclosure. See id. at 741 ("A district court finding a defendant told several different versions of a story is a sufficient basis to find the defendant failed to truthfully and completely disclose.").

Although the district court did not make explicit findings as to whether Alvarado qualified for safety valve relief, the district court's finding that Alvarado obstructed justice under the facts of this case precluded such relief. See United States v. Morones, 181 F.3d 888, 891 (8th Cir. 1999) (explaining when a defendant "initially tells the government the whole truth but later recants," the "defendant is no more entitled to safety valve relief than the defendant who never discloses anything about the crime and its participants"). The district court did not clearly err in not explicitly addressing Alvarado's request for safety valve relief on the record. See Romo, 81 F.3d at 86 (standard of review). Cf. United States v. Cunningham, 429 F.3d 673, 678-79 (7th Cir. 2005) (declaring a sentencing judge is not required to discuss meritless legal arguments). But see United States v. Real-Hernandez, 90 F.3d 356, 360 (9th Cir. 1996) (holding the district court erred when it failed to provide reasons for its decision not to grant safety valve relief under U.S.S.G. § 5C1.2). We affirm the district court's judgment with respect to Alvarado's claims.

### B. Carrillo's Claims on Appeal

Carrillo maintains the district court erred by (1) conducting an improper Guidelines calculation, and (2) considering inappropriate and irrelevant factors. We review the district court's sentence for an abuse of discretion. See Gall v. United States, 552 U.S. 38, 51 (2007). In conducting our review, we must first determine

whether the district court committed a significant procedural error, such as miscalculating the Guidelines range, treating the Guidelines as mandatory, or selecting a sentence based on clearly erroneous facts. Id. If we find the district court's sentence is procedurally sound, we next consider whether it is substantively reasonable. Id. We may find the district court abused its discretion if the court fails to consider a relevant factor, gives significant weight to an improper or irrelevant factor, or commits a clear error of judgment when weighing the appropriate factors. See United States v. Haack, 403 F.3d 997, 1004 (8th Cir. 2005).

Based upon Carrillo's total offense level of 43 and criminal history category III, the advisory Guidelines recommended a sentence of life imprisonment. The district court noted the government charged Carrillo with conspiracy to commit money laundering under 18 U.S.C. § 1956(h), which has a maximum sentence of 20 years. This resulted in a Guidelines range of 240 months imprisonment. The district court then examined the government's motion for a downward departure under U.S.S.G. § 5K1.1 for Carrillo's substantial assistance. Carrillo contends the district court used the wrong Guidelines range as a starting point when calculating the appropriate downward departure, and the district court's discussion of his potential sentence of life imprisonment demonstrates the district court erred in its calculation. We disagree.

The district court recognized "with the statutory cap in place, that the point of departure to be considered is the 240 months statutory cap and not what the guidelines would have otherwise been." The court continued its analysis with a lengthy discussion of the benefit Carrillo received from his plea agreement and the government's decision to charge him under a statute with a statutory cap well below his otherwise applicable Guidelines range. The district court instructed, in some situations, one might consider a sentence of 360 months imprisonment to be the equivalent of a life sentence. The district court explained, under that theory, Carrillo already received the benefit of a six-level reduction from the government's charging decision. The district court contemplated whether, in light of the benefit Carrillo

already received, it would be appropriate to grant the government's U.S.S.G. § 5K1.1 motion. The district court then decided to grant the government's motion for a 12-month downward departure, resulting in a Guidelines range of 228 to 240 months. The district court used the proper starting point—240 months—for calculating an appropriate downward departure.

Further, the district court did not consider an inappropriate or irrelevant factor by considering the benefit Carrillo received from the government's charging decision. See United States v. Carnes, 945 F.2d 1013, 1014 (8th Cir. 1991) (holding it was within the district court's discretion—when determining the extent of a downward departure pursuant to the government's U.S.S.G. § 5K1.1 motion—to weigh the assistance the defendant provided the prosecution against the benefit the defendant received from the prosecution's decision not to press an additional charge). Carrillo's within Guidelines sentence is both procedurally sound and substantively reasonable. See Rita v. United States, 551 U.S. 338, 347 (2007) (holding a court of appeals may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Guidelines).

## III. CONCLUSION

We affirm the district court's judgments.

_____