# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2602

_____

United States of America,             *
                                      *

        Appellee,           *
                                        *   Appeal from the United

      v.                      *   States District Court for the
                                        *   District of Minnesota.

Barry Vincent Ardolf,          *
                                        *

        Appellant.         *

_____

Submitted: February 15, 2012
Filed: July 5, 2012

_____

Before RILEY, Chief Judge, WOLLMAN and SMITH, Circuit Judges.

_____

RILEY, Chief Judge.

Barry Vincent Ardolf pled guilty to (1) unauthorized access to a protected computer, in violation of 18 U.S.C. § 1030(a)(2), (c)(2)(B)(ii); (2) aggravated identity theft, in violation of 18 U.S.C. § 1028A; (3) threats to the Vice President of the United States, in violation of 18 U.S.C. § 871(a); (4) possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2); and (5) distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(1), (b)(1). The district court[1]

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

sentenced Ardolf to 216 months imprisonment. Ardolf appeals the district court's application of separate two-level enhancements under (1) United States Sentencing Guidelines (U.S.S.G. or Guidelines) § 3C1.1 for obstruction of justice, and (2) U.S.S.G. § 2G2.2(b)(7)(A) because Ardolf's offenses involved at least ten images of child pornography. Ardolf also challenges the substantive reasonableness of his sentence. We affirm.

## I.    BACKGROUND
### A.    Factual Background

In August 2008, Ardolf began to play chase with his new neighbors' four-year-old son, W.K., after the boy wandered into Ardolf's yard. W.K.'s mother heard Ardolf say, "Bet you can't touch me," and she then called W.K. back. Ardolf carried W.K. back home. While her back was turned, W.K.'s mother heard Ardolf kiss W.K. Later, W.K. told his mother Ardolf had kissed him on the mouth. W.K.'s father confronted Ardolf, who admitted kissing W.K. Thereafter, W.K.'s father reported this incident to law enforcement.

Following these events, Ardolf began a campaign to terrorize W.K.'s parents. W.K.'s father is a lawyer and was employed at a law firm. In February 2009, Ardolf illegally gained access to W.K.'s parents' wireless internet router and used the access to send three separate emails to the father's coworkers using an email account Ardolf created in the father's name without the father's knowledge. One email contained an image of child pornography (original image) and suggested the coworker "could appreciate" the child pornography. The other two emails indicated romantic or sexual interest by W.K.'s father in the father's work assistant. When the management of the father's law firm confronted him about the emails, W.K.'s father denied sending the emails or using the account from which they were sent.

In March 2009, Ardolf emailed two of the father's coworkers from a different account, posing as a woman and claiming W.K.'s father sexually assaulted her. In

response to this email, the law firm hired an outside law firm and a computer forensic expert to investigate. The investigation showed the emails had been sent using W.K.'s parents' router. The father denied responsibility and stated he suspected Ardolf of sending the emails because Ardolf might be angry about the father reporting Ardolf to the police. After the investigation revealed a device was connected to the parents' router without their knowledge, W.K.'s father allowed the investigator to connect a packet-capturing device to their router in order to discover who was using the router to send the emails.

In July 2009, Ardolf sent the parents harassing emails. He sent the mother an email purporting to be from a woman having an affair with her husband. Ardolf sent the father an anonymous email threatening, "I know where you and your family live[,] and I'm going to get you back for sueing [sic] us."

The investigation also uncovered a MySpace page Ardolf created in the father's name, again without his knowledge or permission. Ardolf posted on that MySpace page the same child pornography image he sent to the father's coworker, except with the children's faces obscured (altered image).

In April and May 2009, several death threats were sent to the Vice President and other public officials from an email address purporting to belong to W.K.'s parents. The federal government became involved in the investigation, and United States Secret Service agents visited the father at his work. Investigators examined the packet-capture data, which revealed Ardolf used the parents' router to send the threatening emails.

On July 21, 2009, federal agents searched Ardolf's home, pursuant to a warrant, and found numerous computers, external data storage devices, manuals about hacking, hacking software, text of the emails sent to the father's coworkers, and notes on the user names and passwords for the accounts created in the parents' names. Analysis

of the computers revealed notes on plans for future harassment of W.K.'s parents and others, screen shots of the hacking software accessing W.K.'s parents' router, and images of child pornography.

### B.     Procedural History
#### 1.     Guilty Plea and Attempted Withdrawal

On June 23, 2010, a grand jury charged Ardolf with (1) one count of unauthorized access to a protected computer, (2) two counts of aggravated identity theft, (3) one count of possession of child pornography, (4) one count of transmission of child pornography, and (5) one count of threats to the President and successors to the Presidency.

Ardolf pled guilty to all counts on December 17, 2010, three days into trial. The district court engaged in a lengthy plea colloquy to ensure Ardolf's plea was knowing, voluntary, and intelligent. Ardolf repeatedly admitted under oath he was guilty of all six counts and his plea was voluntary. Ardolf also admitted, in detail, the facts underlying each offense.

On March 18, 2011, Ardolf moved to withdraw his guilty plea, claiming he had been coerced by his attorney into entering the plea. Ardolf said he lied at the change of plea hearing and did not commit the acts to which he pled guilty. He also asserted that, if given a new trial, he would suggest W.K.'s parents "framed" him. The district court denied Ardolf's motion to withdraw his plea.

#### 2.     Sentencing

The presentence investigation report (PSR) calculated a total offense level of 38 and a criminal history category of I, with a resulting advisory Guidelines range of 235 to 293 months imprisonment. The PSR also noted Ardolf was subject to a minimum two-year consecutive sentence for the aggravated identity theft counts. Ardolf challenged the applicability of several enhancements recommended by the

PSR, including a two-level enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.1; a two-level enhancement for an offense involving ten or more images of child pornography, pursuant to U.S.S.G. § 2G2.2(b)(7); and a four-level enhancement for offenses involving material portraying sadistic or masochistic conduct, pursuant to U.S.S.G. § 2G2.2(b)(4). Ardolf also argued the mandatory minimum sentence for aggravated identity theft should not apply.

### a.    Obstruction of Justice Enhancement

To support the enhancement for obstructing justice, the government introduced four letters. In one, Ardolf instructed his son, T.A., on the answers Ardolf expected T.A. to give to various questions at trial. Ardolf told T.A. "to confirm that you watched [W.K.] and your father, and that no kiss occurred. If you don't, I will likely go to prison." Ardolf also instructed T.A. to "[t]ell the court you saw the whole thing and nothing inappropriet [sic] occurred. I don't know if you watched [W.K.'s father] come over the next day but if you did keep to my story."

After Ardolf pled guilty, he sent letters to his sister and children about how to write letters to the district court for the sentencing hearing. Ardolf told his daughter to say

> how you will figuratively be an orphan and . . . you are crying about not having me there for you. . . . I figure you can write it, mail it to me so I can add suggestions and we can mail it back and forth a few time[s] to make it as good as it can be. This is for you and [T.A.] to do so I get a letter from each of you. You can cry about how you lost mom, now you are loosing [sic] Dad. The better the letter, the smaller jail time the judge gives me.

In another letter, Ardolf told T.A. to contact Ardolf's sister and instruct her not "to say anything bad about my life." Finally, Ardolf asked his sister to allow him to edit her letter "to hopefully get me less years in prison." He drafted her letter "to get [her] on

track" and suggested she say, "That new neighbor made false acusations [sic] against [Ardolf]."

The district court applied the enhancement for obstruction of justice based on "the tone and the nature of the letters to [Ardolf's] son, to [his] sister, insistence that I am going to proofread anything you send in, so send it to me first. And one phrase, keep to my story." The district court stated the enhancement also was proper because Ardolf tried to withdraw his guilty plea, and the district court found Ardolf's "targeting [of] the victims saying, not only am I innocent, but they did it" was not credible.

### b.    Child Pornography Enhancement

FBI Special Agent Robert Cameron testified he found eight images of child pornography on Ardolf's computers and data storage devices, plus the image emailed to the father's coworker and "the image posted on MySpace." Investigators found the original image on five devices and the altered image on three devices. One copy of the original image was in drive free space, meaning "[t]he image was on the computer, . . . then it was deleted. But the image still exists on the computer." Although images in drive free space can only be accessed using specialized tools (some are free and publicly available), "at one point in time, [Ardolf] had it on the computer in a version that he could see." The district court found Ardolf's offenses involved ten images.

### c.    Sentencing Pronouncement

The district court adopted the PSR and applied the mandatory minimum two-year consecutive sentence for aggravated identity theft. The district court granted Ardolf's objection to the enhancements for portrayal of sadistic or masochistic conduct, but overruled Ardolf's other objections. The district court assigned Ardolf a total offense level of 34 and criminal history category of I, resulting in an advisory

Guidelines range of 151 to 188 months imprisonment, then adding a two-year mandatory minimum consecutive sentence for aggravated identity theft.

At sentencing, W.K.'s parents testified about the effect of Ardolf's crimes on them. Both reported they "no longer felt safe in [their] own home" and daily feared another attack. The mother reported having "horrible nightmares" about Ardolf.

The district court noted Ardolf's three children would be affected negatively by Ardolf's imprisonment, especially because their mother is deceased, but the court's sentence would not "restore [W.K.'s parents'] peace of mind, . . . security, [and] serenity." The district court decided Ardolf's offenses were "worse than a [typical] child pornography case" because of the way Ardolf used the images, the threats to the Vice President, the email to the father's assistant, and the allegations the father committed sexual assault to try to destroy W.K.'s parents. The district court stated "people can do more damage with computer hacking, especially when they use a picture like that, than they can with a gun or they can with drugs."

The district court considered the 18 U.S.C. § 3553(a) factors, expressing particular concern with deterring Ardolf from engaging in similar behavior in the future. The district court found Ardolf "at high risk" of repeating such behavior because he had poor self control, as shown by the fact "that incident [involving kissing W.K.] would not drive a normal person to do . . . most of what happened here with" W.K.'s parents.

The district court sentenced Ardolf to 216 months imprisonment because "anything less . . . would not promote respect for the law and provide the proper deterrence." The sentence included a mandatory minimum two-year consecutive sentence for the aggravated identity theft counts. The remaining 192 months Ardolf received for the other counts exceeded the advisory Guidelines range by four months

because "the Guidelines didn't contemplate" the way Ardolf used the child pornography.

## II.  DISCUSSION

We review the district court's imposition of Ardolf's sentence for abuse of discretion, "first ensur[ing] that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Gall v. United States, 552 U.S. 38, 51 (2007).  In doing so, we review the district court's findings of fact for clear error and its application of the Guidelines de novo.  See United States v. Flying By, 511 F.3d 773, 778 (8th Cir. 2007).  If the district court committed no procedural error, we "then consider the substantive reasonableness of the sentence under an abuse-of-discretion standard." Gall, 552 U.S. at 51.

Ardolf contends (1) the district court incorrectly calculated his sentence under the Guidelines by applying enhancements for obstruction of justice and the number of images; and (2) his sentence is substantively unreasonable.

### A.    Procedural Challenges
#### 1.    Obstruction of Justice
A defendant's offense level is increased by two levels if

(1) the defendant wilfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense.

-8-

U.S.S.G. § 3C1.1. The district court found two separate bases for the obstruction of justice enhancement: (1) Ardolf's letters to his children and sister, and (2) Ardolf's perjury in attempting to withdraw his guilty plea.

A defendant's solicitation of false testimony may merit an enhancement for obstruction of justice. See United States v. Noland, 960 F.2d 1384, 1391 (8th Cir. 1992). We concluded in United States v. Mugan, 441 F.3d 622, 631-32 (8th Cir. 2006), that the sentencing court did not clearly err in finding the defendant "attempted to obstruct justice by . . . solicit[ing] false and exculpatory testimony" in letters to his relatives. Id. at 631. We deferred to the sentencing court's disbelief of the defendant's contention "he was only seeking truthful testimony" because the sentencing court's "credibility determination is entitled to deference." Id. at 632.

Similarly, the district court found Ardolf attempted to obstruct justice by instructing T.A. to "keep to [Ardolf's] story" about the alleged kiss of W.K. and the father's ensuing confrontation with Ardolf, telling his children and sister to write only positive things about him, and insisting he edit their letters. Ardolf contends asking T.A. to "keep to [Ardolf's] story" did not relate to his offenses of conviction because kissing W.K. is not an element of any of those offenses. The evidence Ardolf kissed W.K. demonstrates Ardolf's motivation to commit the offenses of which he was convicted. We also must reject Ardolf's claims he was "not instructing his son to lie." The district court's disbelief of this testimony is a credibility determination entitled to our deference. See id. The district court did not clearly err in finding Ardolf's letters solicited "false and exculpatory testimony" relating to Ardolf's offenses of conviction. See id. at 631.

The district court was independently justified in applying the obstruction of justice enhancement based on its finding Ardolf perjured himself when attempting to withdraw his guilty plea. An obstruction of justice enhancement is appropriate where the defendant willfully "testifies falsely under oath in regard to a material matter."

United States v. Alvarado, 615 F.3d 916, 923 (8th Cir. 2010) (quoting United States v. Mendoza-Gonzalez, 363 F.3d 788, 796 (8th Cir. 2004) (internal quotation marks omitted)). Ardolf admitted under oath (1) his guilt, (2) the voluntariness of his plea, and (3) a "series of facts [which] supported his guilt." Alvarado, 615 F.3d at 923. Ardolf's later attempt to withdraw his guilty plea, claiming he did not commit the crimes with which he was charged, "directly contradicted the sworn statements [Ardolf] made during his change of plea hearing." Id. The district court did not clearly err in believing Ardolf's plea testimony and not believing his plea withdrawal testimony and in applying the enhancement for obstruction of justice. See id. (finding an enhancement under U.S.S.G. § 3C1.1 appropriate under similar circumstances).

### 2. Number of Images

U.S.S.G. § 2G2.2(b)(7)(A) calls for a two-level enhancement if the offense involved at least ten, but fewer than 150, images of child pornography. An image is "any visual depiction" of child pornography including electronically-stored data that "is capable of conversion into a visual image." 18 U.S.C. § 2256(5); U.S.S.G. § 2G2.2, cmt. 4(A). "Each photograph, picture, or computer-generated image, or any similar visual depiction shall be considered to be one image." See U.S.S.G. § 2G2.2, cmt. n.4(B)(i).

Ardolf claims he possessed only two images of child pornography. He argues the duplicates of those images do not count as separate images for the purposes of U.S.S.G. § 2G2.2.[2] Ardolf is mistaken. Each duplicate image distributed by a defendant is a separate image based upon the "plain reading of [U.S.S.G. § 2G2.2 cmt. n4(B)]." United States v. Sampson, 606 F.3d 505, 510 (8th Cir. 2010). Ardolf claims Sampson's holding is limited to distribution of duplicate images of child pornography and does not apply to his possession of duplicate images. U.S.S.G. § 2G2.2 "applies

_____

[2]Ardolf concedes both the original and altered images constituted child pornography.

-10-

equally to distribution and possession of child pornography." United States v. McNerney, 636 F.3d 772, 780 (6th Cir. 2011); see U.S.S.G. § 2G2.2. The "plain reading" of U.S.S.G. § 2G2.2, cmt. n.4(B) requires counting duplicates as separate images for purposes of possession. See McNerney, 636 F.3d at 780 (concluding "duplicate digital images" possessed by a defendant are separate images).

Alternatively, Ardolf argues his offenses involved only nine images because the government did not prove the image in the drive free space was or could be transmitted. An image counts if Ardolf possessed it at some point. See United States v. Nissen, 666 F.3d 486, 489, 491 (8th Cir. 2012) (concluding a U.S.S.G. § 2G2.2(b)(7) enhancement was proper because "thumbnail images were created when [since-deleted] videos were edited or played," which allowed the district court to infer the defendant "knowingly possessed the videos because he viewed them or edited them at some point"). Agent Cameron testified the presence of the image in the drive free space meant that, at one point, Ardolf possessed the image itself. The district court did not clearly err in finding Ardolf possessed ten images of child pornography for purposes of the § 2G2.2(b)(7) enhancement. See id.; see also United States v. Paquin, 339 F. App'x 983, 984-86 (11th Cir. 2009) (unpublished per curiam) (deciding the district court did not err in enhancing the defendant's sentence under U.S.S.G. § 2G2.2(b)(7) for deleted images found in "unallocated file space").

## B.    Substantive Reasonableness

Because the "district court's sentencing decision is procedurally sound," we now "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Gall, 552 U.S. at 51. A district court abuses its discretion when "it fails to consider a relevant [18 U.S.C. § 3553(a)] factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." United States v. Watson, 480 F.3d 1175, 1177 (8th Cir. 2007).

Ardolf claims his sentence is substantively unreasonable because he (1) "is a single father of three children," (2) is a first-time offender, and (3) "clearly was not motivated by the rationale behind the child pornography guidelines" because he did not "use[] the child pornography to stimulate his sexual appetite" or "engage[] in child molestation or pedophilia."

"We do not require a court 'to recite the § 3553(a) factors mechanically.'" United States v. Stroud, 673 F.3d 854, 862 (8th Cir. 2012) (quoting United States v. Wood, 587 F.3d 882, 884 (8th Cir. 2009)); see also Rita v. United States, 551 U.S. 338, 356-57 (2007). It is clear the district court here sufficiently considered the § 3553(a) factors. See id. The district court expressly noted Ardolf is the single father of three children and is not a typical child pornography offender. The district court did vary upward by four months because "the Guidelines didn't contemplate" the way in which Ardolf used the child pornography and because the district court believed a shorter sentence "would not promote respect for the law and provide the proper deterrence."

Given Ardolf's serious and repeated invasions of the victims' privacy and security, as well as his plans to continue such conduct had law enforcement not intervened, the district court did not abuse its discretion in sentencing Ardolf to 216 months imprisonment.

## III.  CONCLUSION

We affirm the sentence imposed by the district court.

_____