# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1035

_____

United States of America

*Plaintiff - Appellee*

v.

Kevin Donnell White, also known as Jughead, also known as Jug, also known as
Puff, also known as P. Diddy

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 27, 2013
Filed: November 5, 2013

_____

Before MURPHY, MELLOY, and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

Defendant Kevin White pleaded guilty to laundering money in violation of 18
U.S.C. § 1956(a)(1)(A)(I), (B)(I), and 1956(h), and conspiring to distribute and
possess with intent to distribute cocaine, heroin, and marijuana, in violation of 21
U.S.C. §§ 841(b)(1)(A) and 846. White argues on appeal that: (1) he was given

inadequate time to review the terms of a plea agreement prior to entering a guilty plea and, as such, he did not make his plea knowingly and voluntarily; (2) his counsel labored under an actual conflict of interest; and (3) his counsel was otherwise ineffective. We do not address White's final argument as it relies upon evidence outside the record of conviction and should be raised through collateral proceedings rather than on direct appeal. Regarding his first and second arguments, we find no error in the district court's acceptance of White's plea or in its determination that White's counsel did not labor under a conflict of interest. Accordingly, we affirm.

## I. Background

Investigators discovered White's participation in a drug distribution conspiracy after receiving information that he and another man were attempting to purchase vehicles to be retrofitted with hidden compartments. The investigation eventually revealed that, between early 2009 and mid-2011, White and several other conspirators purchased drugs in Phoenix, Arizona, and distributed those drugs in St. Louis, Missouri. Investigators obtained wiretaps and recorded several incriminating conversations between members of the conspiracy, including White. In addition, investigators collected a great deal of evidence including drug paraphernalia and $360,000 cash during execution of a search warrant at White's home. Officers also stopped two vehicles believed to be used by the conspirators, searched the vehicles, and discovered cocaine and marijuana in both vehicles. Finally, officers discovered marijuana, heroin, and drug paraphernalia at a second house believed to be used by the conspirators.

White had prior convictions for felony drug offenses in 1995 and 1997. The government filed an information pursuant to 21 U.S.C. § 851(a) in the present proceedings seeking a mandatory statutory penalty of life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A) based upon the prior convictions. Trial was scheduled to begin on a Monday. On the Friday before trial, the government reached a tentative

plea agreement with White that contained an appeal waiver and eliminated the § 841(b) enhancement.

At a change of plea hearing, the district court[1] explored whether White was entering into the plea agreement and changing his plea knowingly and voluntarily. The court also explored White's satisfaction with counsel. The colloquy between White and the district court is pertinent to the issues on appeal, and we present it in detail below.

The court first addressed whether White was currently under the influence of drugs or alcohol and whether he had an opportunity to review the charges against him. White responded that he was not under the influence of any substances and that he understood the charges against him. The court then asked White if he was "satisfied with the representation you've received in this case . . . ?" White responded, "Somewhat." The following exchange then took place:

> Q. Well, can you tell me a little bit more than that?
> A. I'm keeping that confidential. I'm sorry, Your Honor.
> Q. Well, we can clear the courtroom because I want to be sure you feel you've had good representation in this matter.
> A. Well, I —
> Q. So if you want to go into detail, I'll clear the courtroom because I don't want you to violate any attorney/client privilege.
> A. Well, I mean I just want to keep it confidential for right now. I mean —
> Q. Okay. Do you have any specific complaints against him without going into any detail?
> A. I asked him to do certain things, and it wasn't done.
> Q. Well, I think maybe we better clear the courtroom.

---

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

A. No. Mr. Pleban is a great attorney. I mean he's a great attorney, but —

Q. Well, do you feel that you're in a position and you've discussed all the evidence and all the matters related to these charges with Mr. Pleban so that you should go through this hearing as opposed to, you know, going to trial which we're going to start on Monday?

A. Certain things was said to me to mislead me, and I believe those things, you know. So now I'm into a plea agreement, so I'm going to take my plea agreement and deal with that.

Q. Okay. So you feel that you've had enough time and you understand enough to proceed with this plea of guilty. Is that correct?

A. Yes.

Q. And do you have — Do you feel that you've had enough time to go over all of this and have all the discussions you need with Mr. Pleban about the plea agreement versus going to trial and how to handle this case?

A. To be honest with you, Your Honor, we haven't had enough time. I was presented with it yesterday.

Q. To look at the plea agreement you mean?

A. Yes. I was — It was given to me yesterday.

Q. Well, why don't you —

A. I just reviewed it. I mean —

Q. Well, why don't we take a few minutes and have you and Mr. Pleban go over this.

A. I mean I don't want to waste the Court's time.

Q. You're not wasting my time.

A. Okay.

Q. I want — This is very important that you know what you're doing. I don't want you to agree to something that you don't feel you've had enough time to think about and talk to Mr. Pleban and consult your attorney. Why don't you and Mr. Pleban go over there. We'll take a few minutes or however long you want to go over this because you have reviewed it but there may be some provisions you want to talk to him about. Is that correct?

(Mr. White consulting with his attorney)

ATTORNEY: Can I have just a second?
THE COURT: Sure.

(Mr. Pleban consulting with his client)

ATTORNEY: I think we're ready, Your Honor.
THE COURT: Okay.

Q.    Mr. White, have you had a few moments now to talk with Mr. Pleban?
A.    Yes.
Q.    And do you feel that you've had sufficient time to talk with him about the provisions of this document? We're going to talk — I'm going to talk about it with you, too, in the next few minutes.
A.    Okay, thanks.
Q.    But if you have any questions that you want to consult your lawyer about, then I want — I want you to know that you can do that. Okay?
A.    Okay.

The court then reviewed the written plea agreement with White, confirmed that White understood and agreed with its contents, confirmed that White understood the rights he was giving up by pleading guilty, and confirmed that White had received no promises or assurances outside the plea agreement to cause him to change his plea. Finally, the court heard a recitation of the facts from the government in support of the guilty plea, and White confirmed that he agreed with the factual basis of the plea. At no point in the transcript of the change of plea hearing is there a suggestion that the court doubted White's mental capacity, his ability to understand the proceedings or the agreement, or the voluntariness of White's change of plea.

After the court accepted White's plea, but before sentencing, White moved to withdraw his plea, arguing that his counsel had labored under an actual conflict of

interest. White asserted that counsel previously had represented a police investigator who had been convicted of federal crimes and who had been involved in earlier investigations that led to White's prior felony drug convictions. Counsel's representation of the officer had ended prior to White's commission of the present offense and prior to the investigation into the present offense. There is no allegation that the officer was involved in the present investigation. The district court held an expedited hearing and found no conflict of interest.

The plea agreement indicated that the parties agreed the total offense level pursuant to the advisory sentencing guidelines would be 32 if White were to receive a two-level downward adjustment for acceptance of responsibility. The agreement also stated that an adjustment for acceptance of responsibility was dependent upon evidence currently known and that if:

> the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction . . . without violating the plea agreement.

The presentence report asserted that White's attempt to withdraw his plea involved an assertion of facts inconsistent with his plea and served as statements or conduct inconsistent with acceptance of responsibility. Accordingly, the presentence report recommended a total offense level of 34. The district court adopted this total offense level, resulting in an advisory range of 188–235 months, and imposed a sentence of 188 months.

## II. Discussion

A defendant may withdraw a guilty plea prior to sentencing if the defendant presents a fair and just reason to withdraw. Fed. R. Crim. P. 11(d)(2)(B); United

States v. Alvarado, 615 F.3d 916, 920 (8th Cir. 2010). We review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion. Alvarado, 615 F.3d at 920. Here, White appears to challenge the denial of his motion to withdraw on two grounds: (1) an initial alleged failure by the district court to ensure that White made his plea knowingly and voluntarily; and (2) the later denial of his motion to withdraw on the grounds that counsel labored under an actual conflict of interest.

Regarding the first challenge, we find no abuse of discretion. Through the plea colloquy, as described and quoted at length above, the district court questioned and personally observed White and confirmed the voluntary and knowing nature of his plea. White confessed his guilt to the crime and admitted to the underlying facts as described by the government and as described in the plea agreement. We do not lightly ignore the impact of these actions when reviewing the underlying proceedings. See, e.g., United States v. Green, 521 F.3d 929, 931 (8th Cir. 2008) ("There is no *right* to withdraw; 'the plea of guilty is a solemn act not to be disregarded because of belated misgivings about its wisdom.'" (quoting United States v. Fitzhugh, 78 F.3d 1326, 1328 (8th Cir. 1996))).

To the extent White argues his plea was involuntary because he was afforded inadequate time to review his plea agreement or that he was not adequately questioned after expressing inconclusive and less-than-complete satisfaction with counsel, the transcript adequately demonstrates the propriety of the district court's actions. When White suggested he was not fully satisfied with counsel, the court followed-up repeatedly and White confirmed his satisfaction with counsel. When he suggested he needed additional time, the district court gave him additional time. Although White emphasizes the language "take a few minutes," this emphasis is unfair. The court suspended proceedings and instructed White to take "however long you want." White then, in fact, consulted with counsel and confirmed to the district court that he needed no additional time.

Further, if White's time-related challenge to the court's voluntariness determination is premised on the general proximity of the Friday hearing to the pending Monday trial date, we have repeatedly rejected similar arguments. See, e.g., United States v. Pacheco, 641 F.3d 970, 975 (8th Cir. 2011) ("The stress arising from an imminent trial and the potential of a lengthy loss of liberty naturally creates pressure even in the most competent person."); United States v. Swick, 262 F.3d 684, 686–87 (8th Cir. 2001) ("All defendants in plea negotiations struggle with the issue of whether to plead guilty or to take their chances at trial. There is nothing in the record to indicate [the] situation was that different from any other ordinary defendant, or that he was under any greater pressure than any other defendant who is weighing the option of pleading guilty or going to trial."). Simply put, the fact of a pending trial does not serve to make an eve-of-trial plea involuntary.

Regarding the second challenge, the district court held an expedited hearing on White's claim that counsel labored under an actual conflict. The district properly found no conflict because no active dual representation of conflicting interests occurred. Counsel's prior client was not alleged to have been involved in the present investigation, and representation of that client ended prior to the present offense and investigation. In the absence of conflicting and active dual representation, prejudice is not presumed. United States v. Flynn, 87 F.3d 996, 1001 (8th Cir. 1996). Further, even if counsel's prior client had been offered as a witness against White, counsel's *prior* representation of a government witness does not give rise to a presumption of prejudice. See id. ("The mere fact that a trial lawyer had previously represented a prosecution witness does not entitle a defendant to relief. The defendant must show that this successive representation had some actual and demonstrable adverse effect on the case, not merely an abstract or theoretical one.") (internal citation omitted). And here, counsel's prior client was not even a witness against White.

To the extent White argues prejudice existed, his arguments are without merit. Although counsel's prior client was involved in unrelated earlier investigations that

led to White's earlier convictions, any such representation was immaterial to the present case. The validity of the prior convictions was not an issue before the district court. Indeed, even if White had gone to trial and even if the enhancements had remained in the case, White would have been precluded by statute from challenging the validity of his convictions because they "occurred more than five years before the date of the information alleging such prior conviction." 21 U.S.C. § 851(e).

Finally, we note that the district court granted a motion for the allegedly conflicted counsel to withdraw, and a different attorney represented White at sentencing. As such, he cannot argue that the allegedly conflicted counsel somehow affected his ability to address the prior convictions as relevant to his criminal history determination.

We affirm the judgment of the district court.[2]

---

---

[2] We make no comment upon the validity or applicability of the appeal waiver contained in the plea agreement in this case. See United States v. Dace, 660 F.3d 1011, 1014 n.2 (8th Cir. 2011) (rejecting a criminal defendant's substantive arguments on appeal in lieu of deciding the validity and applicability of an appeal waiver). We deny as moot the government's pending motion to dismiss.