**James Franklin REAVES, Petitioner,**

v.

**UNITED STATES of America,
Respondent.**

No. J–C–81–14 (J–CR–78–40).

United States District Court,
E. D. Arkansas,
Jonesboro Division.

Oct. 16, 1981.

Joseph H. Purvis, Wallace, Hilburn, Clayton and Calhoon, Ltd., North Little Rock, Ark., for petitioner.

Kenneth F. Stoll, Asst. U. S. Atty., Little Rock, Ark., for respondent.

## MEMORANDUM OPINION

ARNOLD, Circuit Judge, Sitting by Designation.

This is a proceeding under 28 U.S.C. § 2255 commenced on behalf of James Franklin Reaves on March 3, 1981.

On October 18, 1978, Reaves pleaded guilty to two counts of unlawful possession of stolen checks in violation of 18 U.S.C. § 1708. This Court sentenced Reaves to four years on Count I and four years on Count II. The sentence on Count I was to run concurrently with the sentence on Count II. Those sentences were expressly made consecutive to the State sentence he was already serving.

This Court appointed counsel for Reaves, to assist him with his petition for post-conviction relief, and an evidentiary hearing was held on June 1, 1981. Petitioner contends that he committed the acts charged at the instance of the government, and that therefore he is not guilty. He also claims that his Fifth and Sixth Amendment rights, as well as Fed.R.Crim.P. 11, were violated because he was not told that under 18 U.S.C. §§ 3568 and 4208 this Court lacked the power to make its sentence concurrent with the State sentence he was already serving.

## I.

The Court need not decide Reaves's contention that his guilty plea was taken in violation of his constitutional rights and Rule 11. For the reasons discussed below, his guilty plea will be set aside pursuant to Rule 32(d) of the Federal Rules of Criminal Procedure, and a trial will be ordered to determine the merits of his case.[1]

1. The amended petition filed by appointed counsel for Reaves is based only on 28 U.S.C. § 2255. It does not refer to Fed.R.Crim.P. 32(d). The Court is nevertheless treating the case as though an alternative request for relief under R. 32(d) had been made. Most of the

Reaves acted as a paid informant for the government on at least three occasions between 1971 and 1978. In 1971 he gave the Federal Bureau of Investigation (FBI) information about stolen property, and in 1977 he supplied information concerning a fugitive; on both occasions the FBI paid him (Tr. 61–62).

In December of 1977, Reaves brought a stolen check to Agent David H. Johnson of the FBI (Tr. 68). At the hearing Johnson in effect conceded that he encouraged Reaves to gather more information on people cashing stolen checks:

THE COURT: So in other words, you might have told him to do some work with regard to checks?

WITNESS: I might have—I probably did tell him that we will receive some information if he had it available.

THE COURT: I think you testified a minute ago that you may have asked him to set up a buy of stolen checks. Did I hear you correctly?

WITNESS: Well, I cannot deny that I did. I think James's testimony was that he was going to set me up with the stolen buy—with the buy of stolen checks. The F.B.I. did not work government treasury checks, either theft from the mails or the forging of them. I cannot deny that I asked him to work with other agencies that were responsible, I can't deny it. I don't recall it (Tr. 85–86).

On February 11, 1978, Reaves was in the company of two men who proceeded to cash two stolen checks. He did not sign the checks, but he did have possession of them for a few moments when he was asked to hand them from one man to the other. Reaves and the others did not know that they had taken the checks to a police undercover operation.

Reaves testified that he repeatedly tried informing Johnson of the above transaction, but that he was unable to reach him. In

legal and factual issues argued on both sides with respect to § 2255 are also relevant under R. 32(d). There is no unfairness or surprise to the United States, because its Response to Reaves's amended petition specifically argues the R. 32(d) question on its merits.

March of 1978 Reaves did notify a postal inspector of the check-cashing event.[2] The inspector expressed interest in the information and paid Reaves $50.00 (Tr. 103–04).

In August of 1978, Reaves was arrested for participating in this incident, which had transpired in February. Reaves called Johnson for help, but Johnson refused to aid him (Tr. 75).

Stephen Gershner was appointed by the Court to represent Reaves in September of 1978. Reaves told him that he had participated as a *government agent* in the transaction which occurred on February 11, and that he had had no intention of committing a crime (Tr. 53). Gershner contacted Johnson, but Johnson refused to corroborate this claim. "Agent Johnson admitted that Mr. Reaves had worked for them previously, but he denied any involvement with Reaves in this matter" (Tr. 53). Gershner related this conversation to Reaves and indicated to him that there was little chance of an acquittal based on the evidence. Following Gershner's suggestion, Reaves accepted the prosecution's offer to drop Counts III through VII in return for a guilty plea (Tr. 54).

2. The government already knew that Reaves had cashed the checks, because everything that took place at the undercover operation was video-taped. But there is no proof (so far, at least) that Reaves knew that the government already knew when he voluntarily presented himself to postal authorities.

3. Johnson's affidavit, filed as an exhibit to the government's Response, corroborates Gershner's testimony as to what Johnson told him before he and Reaves conferred on whether to plead guilty. The affidavit says, for example, ¶ 4, that "[n]o instructions were given to Reaves at this time by affiant concerning this check or any other checks of a similar nature." At the evidentiary hearing the Court questioned Johnson about this sworn statement:

THE COURT: Mr. Johnson let me ask you a couple of things and make sure I understand. Your affidavit dated April 9 says, "No instructions were given to Reaves at this time unless referring to December of '77, by affiant, concerning this check or any other checks that might exist of a similar nature." Is that your testimony today?

WITNESS: Are you talking about specific instructions with checks?

THE COURT: Well, I'm reading from your affidavit.

Rule 32(d) of the Federal Rules of Criminal Procedure states: "to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

◼ Manifest injustice may be found, and a guilty plea withdrawn, if the plea was entered by mistake or under a misconception. *United States v. Lias*, 173 F.2d 685 (4th Cir. 1949). It is easier for a defendant to show "manifest injustice" than a deprivation of due process. *Woodward v. United States*, 426 F.2d 959, 964 (3d Cir. 1970).

◼ Prior to sentencing, Reaves repeatedly alleged his innocence to both Gershner and Johnson (Tr. 19, 20, 53, 54). But Johnson told both Gershner and Reaves that on February 11, 1978, Reaves was in no way acting on behalf of the FBI (Tr. 53).[3] Reaves contends that he pleaded guilty because he thought Johnson would say the same thing at trial and that he would therefore have insufficient evidence to support his claim of innocence. There is no reason to doubt that this is a correct statement of Reaves's reasons for pleading guilty.

WITNESS: No specific instructions were given about any particular check.

THE COURT: I'm wondering why you put the word "specific" in your answer. Could you have given him a general instruction?

WITNESS: I could have said, "We'll receive any information and pass it on to the appropriate people." But as far as specific instructions in his affidavit he said that I said work checks but don't—just don't sign any checks. That's what I was referring to. Tr. 85. This testimony by Johnson, especially when read together with the next few questions and answers, Tr. 85–86, quoted above in this opinion, gives a substantially different impression from what he told Gershner before the plea was entered, and from what he told this Court in his affidavit before the evidentiary hearing on Reaves's petition for post-conviction relief. The Court is not finding that Mr. Johnson has been untruthful. Sometimes differences of emphasis, or of recollection, produce different accounts of the same series of transactions or events. But it is clear that the degree of Johnson's involvement with Reaves appears to be materially greater now than it did to Reaves and Gershner when the guilty plea was entered.

Contrary to Reaves's expectations, Johnson now appears to concede that the FBI encouraged Reaves to set up a buy of stolen checks (Tr. 85–86). This testimony suggests several possible defenses arguably available to Reaves that were not reasonably apparent before he pleaded guilty, namely, 1) that he lacked the requisite *mens rea* for committing the crime, *United States v. Beechum*, 555 F.2d 487, 498 (5th Cir. 1977), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979); 2) that the government's action constituted something akin to entrapment, see *Hampton v. United States*, 425 U.S. 484, 490, 96 S.Ct. 1646, 1650, 48 L.Ed.2d 113 (1976); and 3) that he relied in good faith on an implicit assurance that he would not be prosecuted, *United States v. Laub*, 385 U.S. 475, 487, 87 S.Ct. 574, 581, 17 L.Ed.2d 526 (1967). *Cf. Raley v. Ohio*, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959).

Manifest injustice exists, in that Reaves pleaded guilty and waived these defenses, while under the belief that Johnson would flatly deny having encouraged Reaves to set up a "buy of stolen checks" (Tr. 85–86). In order to correct this manifest injustice, Reaves should now be allowed to withdraw his guilty plea and present to a jury the defenses which Johnson's testimony may now make tenable.

## II.

To summarize, the motion to set aside the conviction as invalid under 28 U.S.C. § 2255 will be dismissed as moot. But the guilty plea will be withdrawn under Fed.R.Crim.P. 32(d) to avoid the "manifest injustice" of imprisoning Reaves (who has yet to begin serving his federal sentence) when a jury might find that he was acting in good faith to carry out what he had been encouraged to believe were governmental purposes. The Court is reluctant to grant even this measure of relief, because of the strong interest in finality of judgments, and be-

cause Reaves assured the Court at the time of the guilty plea that he was in fact guilty, and said nothing about having acted as an agent or informer for the government. Ordinarily these solemn assurances would be conclusive. But here the evidence has shown that Reaves's theory of defense is in fact substantially stronger than he and his lawyer reasonably believed at the time of the plea. This theory of defense is based on the alleged conduct of the government itself.[4] This Court, if it had known on October 18, 1978, what it knows now, would not have accepted the plea of guilty. To permit it to stand now would be manifestly unjust.

The plea of guilty to Counts I and II is withdrawn. Whether Counts III through VII, which were dismissed on motion of the government in exchange for the guilty plea, should now be reinstated, since the *quid pro quo* for the dismissal no longer exists, is a question that must be considered. Fairness to the government may require that all counts of the indictment now stand for trial. See *United States v. Gilliss*, 645 F.2d 1269 (8th Cir. 1980). The United States should file a memorandum addressing this question on or before October 26, 1981. Counsel for Reaves may have until November 5, 1981, to reply. Entry of a formal order will be withheld until this additional point is settled. Time limits fixed by the Speedy Trial Act will not begin to run until that order is entered.

---

4. No implication is intended that it was improper for Johnson to enlist Reaves as an informer. This technique of law enforcement is proper and, indeed, necessary in the public interest.