**UNITED STATES of America, Appellee,**

v.

**Sanford R. MORRISON, Appellant.**

**No. 91–2759.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1991.

Decided June 16, 1992.

---

Al Arendt, Pierre, S.D., argued, for appellant.

David L. Zuercher, Pierre, S.D., argued (Philip N. Hogen, on brief), for appellee.

Before BEAM, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

This direct appeal raises a difficult issue under Rule 32(d) of the Federal Rules of Criminal Procedure—whether the district court[1] abused its discretion in denying, without an evidentiary hearing, Sanford R. Morrison's pre-sentence motion to withdraw his plea of guilty to attempted sexual abuse on the ground that the Presentence Report contained newly discovered evidence that the prosecuting witness had recanted. We conclude that, on the particular facts of this case, the district court properly balanced the competing interests of the person accused and the victim of the crime. Accordingly, we affirm.

## I.

Morrison is an enrolled member of the Rosebud Sioux tribe. On August 27, 1990, his estranged common-law wife, Belle Starboy, told Bureau of Indian Affairs investigators that Morrison had forcibly raped her the previous evening, after a long day of heavy drinking and fighting. On September 20, a grand jury indicted Morrison on one count of aggravated sexual assault in violation of 18 U.S.C. §§ 1153 and 2242(1). He pleaded not guilty, and the district court scheduled his trial to begin on January 10, 1991.

On January 9, Morrison appeared with his court-appointed attorneys to enter a plea of guilty to the lesser-included felony of attempted sexual assault. The district court conducted a hearing on this proposed change of plea under Rule 11 of the Federal Rules of Criminal Procedure. After Morrison had waived an indictment, the district judge asked the government to state the factual basis for the guilty plea, and the prosecutor responded:

MR. HOLMES: ... The Government would call Belle Starboy who would testify that she lived with the defendant for several years and that together they had two children. They were never formally married.

She would testify that she stopped living with the defendant in June of 1990. [O]n August ... 26th.... [t]he defendant came to the home of Belle Starboy and wanted to take their two children to the carnival at the Rosebud Fair. Belle Starboy, her children, and another niece went with the defendant to the carnival. Before and during this trip she began drinking and so did the defendant.

They later returned from the carnival and left the two children with other relatives and returned to Rosebud to watch some baseball games. During this period of time both the defendant and Belle Starboy were drinking.

At approximately 11 p.m. on that date they ... drove back to Mission, South Dakota. While driving through Mission, South Dakota, the defendant and Belle Starboy became—or, began to get into an argument about relationships that they were having with other men and women. And an argument developed. During this argument the defendant hit her in the face several times and later he pushed her niece, Pauline Starboy, out of the car. The car then drove back west through Mission, South Dakota, to the stoplight and pulled up towards the Moran gas station where the car quit. At that location the defendant continued to

**1.** The decision of the HONORABLE DONALD J. PORTER, Senior United States District Judge for the District of South Dakota, is reported at

*United States v. Morrison,* 770 F.Supp. 526 (D.S.D.1991).

strike her and she struck him back. They walked away from the vehicle to another home located north of the Moran gas station. There was a pickup parked outside this home.

She would testify that the defendant pushed her into the cab of the pickup and took her clothing from her. He also took off his clothing.

She would testify that she did not resist him because she was afraid that he would continue to strike and assault her.

She would testify that he got on top of her in the pickup and had intercourse with her. She was later able to get free from him and go to a residence and obtain some clothing and called the police.

The court then asked Morrison whether the facts as stated by the prosecutor were true:

THE DEFENDANT: I have no dispute with the information.

THE COURT: I'll ask you this, Mr. Morrison: This would be the elements.

Did you on or about the 26th of August, 1990, knowingly cause or attempt to cause Belle Starboy to engage in a sexual act?

THE DEFENDANT: Yes.

THE COURT: And did you cause or attempt to cause Belle Starboy to engage in said sexual act by threatening Belle Starboy or placing her in fear?

THE DEFENDANT: Yes, Your Honor.

After complying with the other requirements of Rule 11, the district court accepted the plea and set a date for sentencing.

On February 15, Morrison filed a motion to withdraw the guilty plea and a one paragraph brief stating that he is innocent and "wishes to exercise his Constitutional right to a jury trial." On March 4, the government filed a brief opposing the motion and a supporting affidavit by the prosecutor alleging the following prejudice if the guilty plea were withdrawn:

[In preparing for trial,] I discussed the facts of this case with Belle Starboy and other members of her family. I also discussed the case with law enforcement officers on the Rosebud Reservation. They all revealed that Belle Starboy had been involved in an abusive relationship with the defendant for many years. The defendant had lived with the victim off and on for several years. The victim indicated that during that time she had been physically abused by the defendant on several occasions and had to be taken to the hospital for treatment. She was very much afraid of the defendant and afraid of going through the process of the trial. Members of the victim's family and local law enforcement officers indicated that on several occasions Belle Starboy had been physically abused by the defendant and failed to carry through with the prosecution of criminal charges. They were all trying to be very supportive to help her through the prosecution of this case. There were several very emotional conversations where the victim and members of the family expressed extreme concern about going into court and testifying. They were all fearful of the defendant and all fearful of the process.

\*     \*     \*     \*     \*     \*

When the final plea agreement was reached, the victim and her family seemed relieved and indicated that they hoped they would not have to go through such a traumatic event again.

It is the opinion of your affiant that the victim suffered a great deal of emotional distress during the course of the trial preparation process and the plea negotiations. The same is true for members of victim's family.

On March 12, the district court denied the motion on the ground that Morrison's assertion of innocence failed to state an adequate reason for withdrawing his voluntary plea. A cursory motion to reconsider was later denied.

On May 16, Morrison's newly-appointed substitute counsel requested a continuance of the sentencing because he had not received the Presentence Report and because "my client ... has indicated the possibility of wanting me to pursue an attempt to withdraw his plea." Counsel explained:

MR. ARENDT: I believe Belle Starboy, based upon my contact with [the Probation Officer] and with Belle Starboy, would basically recant.... It is my intent to subpoena Belle Starboy, to have her testify as to what she's been telling people now as opposed to what she did before.

The district court responded:

THE COURT: I'm not aware that a defendant in this situation would have a right to one more time to call the person allegedly raped by force, to call the person into the courtroom and cross-examine the person in the hopes that the recantation would be developed. Ordinarily the cases that I've had before the recantation has already occurred.... Unless and until I have some solid basis for it I would not be inclined to order the alleged victim to come into court and be subject to cross-examination.

The court granted counsel's request for a continuance but also granted the government's motion to have Morrison remanded to custody, which was based in part on "evidence ... that he has had contact with [Starboy]" in violation of his release order.

On May 22, Morrison filed a renewed Motion for Withdrawal of Plea, alleging that he was entitled to an evidentiary hearing based upon his claim of innocence supported by the following portion of the May 9 Presentence Report:

16. Belle Starboy was interviewed by a U.S. probation office at Rapid City, SD. Ms. Starboy advised she could not recall and was uncertain whether penetration occurred between her and Sanford because of the state of her intoxication. She stated she and Sanford were arguing about an occasion when she had taken their children along when she had gone out on a date with another man. She stated that after leaving the baseball game in Rosebud, SD, she had been driving Sanford's car until they pulled over and Sanford told her niece to exit the car. Sanford then started driving the vehicle. She stated both of them were fighting with each other, pulling hair and hitting with hands and fists. She eventually reached over and turned the ignition off and the car coasted into the service station parking lot.

17. Belle advised she and Sanford walked approximately three blocks in the town of Mission, SD. They came to a house where the pickup truck was parked and got in the vehicle. She stated they took off her blouse together but she is unable to recall with certainty what occurred afterwards. Ms. Starboy told the probation officer she consented to the pelvic examination at the hospital in order to determine if sexual intercourse had actually occurred between her and Sanford.

Morrison also filed affidavits from his former attorney and an investigator stating that Starboy had been unwilling to be interviewed prior to trial. Morrison argued that, had he known of this defense of consent, he would not have pleaded guilty to a lesser charge.

The district court denied the motion without an evidentiary hearing. The court assumed that Starboy had made the inconsistent statements contained in the Presentence Report. Noting that "Rule 32(d) was not enacted to give the defendant additional time to reflect on his plea decision or to further investigate the strength of the government's case against him," the court held that Morrison still had not stated a fair and just reason for withdrawing his plea. The court also observed that Morrison's initial five-week delay weighed against his motion, and that the Government had been put to considerable expense before the plea. 770 F.Supp. at 530. On appeal, Morrison challenges both the denial of his motion to withdraw and the refusal to hold an evidentiary hearing on that motion.

II.

Rule 32(d) provides that the district court may permit withdrawal of a guilty plea before sentence is imposed "upon a showing by the defendant of any fair and just reason." In denying such a motion, the court "need not hold an eviden-

tiary hearing if the allegations in the motion are inherently unreliable, are not supported by specific facts or are not grounds for withdrawal even if true." *United States v. Thompson*, 906 F.2d 1292, 1299 (8th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 530, 112 L.Ed.2d 540 (1990). We review both the denial of a motion to withdraw and the refusal to hold a hearing under the abuse of discretion standard. *See, e.g., United States v. Casey*, 951 F.2d 892 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2284, 119 L.Ed.2d 209 (1992).

■ It is clear that Morrison's initial motion to withdraw was properly denied. An assertion of innocence—even a "swift change of heart after the plea"—does not constitute a "fair and just reason" to grant withdrawal. *See United States v. Devins*, 646 F.2d 336, 337 (8th Cir.1981). Conclusory assertions of innocence do not warrant an evidentiary hearing. *See United States v. Fountain*, 777 F.2d 351, 358 (7th Cir. 1985), *cert. denied sub nom. Granger v. United States*, 475 U.S. 1029, 106 S.Ct. 1232, 89 L.Ed.2d 341 (1986).[2] "The plea of guilty is a solemn act not to be disregarded because of belated misgivings about [its] wisdom." *United States v. Woosley*, 440 F.2d 1280, 1281 (8th Cir.), *cert. denied,* 404 U.S. 864, 92 S.Ct. 53, 30 L.Ed.2d 108 (1971). When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, "the occasion for setting aside a guilty plea should seldom arise." *United States v. Rawlins*, 440 F.2d 1043, 1046 (8th Cir.1971).[3]

■ Morrison argues that his later motion did present a "fair and just reason" to withdraw his guilty plea, the discovery of a consent defense based upon Starboy's

statements to the Probation Officer reported in the PSR. Courts have dealt carefully with Rule 32(d) motions based upon newly discovered evidence, or a previously unknown or unavailable defense. Serious allegations of this nature usually require an evidentiary hearing. *See United States v. Bryant*, 640 F.2d 170 (8th Cir.1981) (claim of new alibi witness and new evidence from co-defendants' trial; motion denied after a hearing demonstrated these reasons were a sham); *United States v. Fournier*, 594 F.2d 276, 279 (1st Cir.1979) (claim that government witness recanted and of newly discovered evidence; case remanded for explanation of why hearing was denied); *United States v. Joslin*, 434 F.2d 526 (D.C.Cir.1970) (remanded for hearing, with new counsel, on defendant's claim of innocence and mental illness affecting his guilty plea); *Hawk v. United States*, 340 F.2d 792 (D.C.Cir.1964) (remanded for hearing on allegation that prosecuting witness had committed perjury before the grand jury based upon her testimony at a subsequent co-defendant's trial). *See also Reaves v. United States*, 523 F.Supp. 1355 (E.D.Ark.1981) (§ 2255 relief granted when hearing revealed that F.B.I. agent's testimony might well establish an entrapment defense).

Although Morrison's allegations appear to fall within the purview of these cases, we nonetheless conclude, for the following reasons, that the district court did not abuse its discretion in denying his motion without an evidentiary hearing:

*First,* Morrison's showing of a new defense was weak. Starboy's statements to the Probation Officer, as reported in the PSR, fall far short of a "recantation." At the Rule 11 hearing, the prosecutor stated that Starboy would testify that they had

**2.** In addition to conclusory assertions of innocence or coercion, many other grounds alleged for withdrawal of the plea have been summarily rejected, including a motion prompted by the post-plea acquittal of a co-defendant, *see United States v. Boyd*, 610 F.2d 521 (8th Cir.1979), *cert. denied sub nom. Artez v. United States*, 444 U.S. 1089, 100 S.Ct. 1052, 62 L.Ed.2d 777 (1980); a motion made because the defendant came to fear a prison sentence, *see United States v. Pitt*, 378 F.2d 608 (8th Cir.1967); and a motion by a

defendant who "suddenly realize[d] he might be acquitted," *United States v. Picone*, 773 F.2d 224, 226 (8th Cir.1985).

**3.** *See generally Blackledge v. Allison*, 431 U.S. 63, 71–75, 97 S.Ct. 1621, 1627–30, 52 L.Ed.2d 136 (1977); *Brady v. United States*, 397 U.S. 742, 756–57, 90 S.Ct. 1463, 1473, 25 L.Ed.2d 747 (1970).

had intercourse and "that she did not resist him because she was afraid that he would continue to strike and assault her," allegations that Morrison acknowledged were true. On the other hand, the PSR recited that Starboy "is unable to recall with certainty what occurred" after she and Morrison were in the pickup truck. Although this statement might prove useful in cross-examining Starboy at trial, it is not inconsistent with her contemporaneous complaints to law enforcement investigators that she had been raped.

It is significant that, more than four months after his Rule 11 hearing, Morrison could present nothing to support this new defense other than Starboy's inconclusive statements in the PSR. Before this final motion was filed, the government had accused Morrison of violating his conditions of release by contacting Starboy. Less than a week before the motion was filed, Morrison's new attorney stated that he had contacted her. In these circumstances, if Starboy had in fact been willing to recant her complaint of rape, she would have so advised Morrison or his counsel and might well have provided an affidavit to that effect in support of the motion. *Compare United States v. Giardino*, 797 F.2d 30, 31 (1st Cir.1986) (allegation that government witness would in fact testify for the defendant supported by affidavit from that witness).

*Second*, we share the district court's reluctance to permit an evidentiary hearing at which Morrison's attorneys could subpoena and cross-examine Starboy on her willingness to press forward as the complaining witness. That is a procedure to which the defense would not otherwise be entitled. The plea withdrawal procedure should not be used either as an avenue for discovery or as a device to intimidate prosecution witnesses. Thus, as the district court commented, withdrawal on this ground should be based upon recanting that has already occurred, not on the hope that recanting can be elicited at an evidentiary hearing.

The risk of abuse is particularly strong in this case because of Morrison's long history of physically and sexually abusing Starboy. The PSR recites that, "Starboy told investigators Morrison had raped her in the past and had beaten her on numerous occasions." Morrison's criminal history category was enhanced by a 1989 conviction for simple assault "committed upon Belle Starboy." Given the history of their relationship, the district court was properly concerned that the evidentiary hearing Morrison requested could, regardless of its merits, intimidate Starboy into retracting her criminal complaint.

*Third*, in considering any Rule 32(d) motion, the defendant's fair and just reason must always be balanced against prejudice to the government.[4] Morrison had waited until the eve of trial before pleading guilty, when it was obvious that Starboy would carry through on her criminal complaint. The prosecutor's affidavit in opposition to the first motion to withdraw explained in great detail the trauma of preparing for trial for Starboy and her family, and the difficulty of gathering witnesses for a trial of this sort. Withdrawal of the plea would obviously require the prosecution and its witnesses to endure this emotional process again. Whether we classify this as prejudice to the government, or prejudice to the complaining victim, it is real prejudice, caused by the timing of Morrison's guilty plea and subsequent attempts to withdraw. *Compare United States v. Bryant*, 640 F.2d at 172.

In these circumstances, we agree with the district court's decision to resolve the evidentiary hearing issue by assuming the truth of the statements attributed to Starboy in the PSR. Assuming the truth of those statements, Morrison's purported new evidence was not a recantation but only weak impeachment of Starboy's testimony as summarized at the Rule 11 hearing. The district court properly placed a high burden on Morrison to justify with-

---

4. *See, e.g., United States v. Nahodil*, 776 F.Supp. 991, 996 (M.D.Pa.1991) (though defendant presented fair and just reason, death of key prosecution witness was prejudice to the government requiring denial of Rule 32(d) motion).

drawing his voluntary plea, and correctly concluded that he had failed to meet that burden. Thus, the final motion to withdraw was properly denied.

The judgment of the district court is affirmed.