2011 ND 234

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Robert Doyle JONES, Jr., Defendant and Appellant.**

No. 20110128.

Supreme Court of North Dakota.

Dec. 13, 2011.

Rehearing Denied Jan. 12, 2012.

Reid A. Brady (argued) and Mark R. Boening (on brief), Assistant State's Attorneys, Fargo, ND, for plaintiff and appellee.

Nicholas D. Thornton, Fargo Public Defender Office, Fargo, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Robert Doyle Jones Jr. appealed from a district court order denying his motion to withdraw his guilty pleas. We affirm.

## I.

[¶ 2] Jones was arrested on March 30, 2011. The next day, the State charged him with three class A misdemeanors: interference with a telephone during an emergency call, criminal mischief, and simple assault (domestic violence, second offense). Jones consented in writing to appear for arraignment via interactive television, and was arraigned, along with other individuals, on April 1, 2011. At the beginning of the hearing, the district court advised that each individual had the following rights: the right to hear the charges against him or her and the penalties associated with those charges; the right to have a lawyer advise him or her before making any statements, answering any questions, or at any time when events happen in his or her case; the right to have a lawyer appointed if he or she could not afford a lawyer; the right to a presumption of innocence; the right to a jury trial; the right to confront and compel witnesses to appear; and the right to remain silent. The district court also explained that if an individual chose to plead guilty, he or she would "give up all of those rights that [the court] ha[d] just explained[.]" The district court also explained that it was not obligated to follow the State's sentencing recommendation, but could impose whatever sentence it believed appropriate, and this sentence could be more harsh than the State's recommendation.

[¶ 3] Jones's case was called, and the district court asked him if he was present when the court read his rights and whether he understood those rights, and Jones answered that he heard his rights and understood them. The district court advised Jones of the three charges and the maximum and mandatory minimum penalties associated with the charges, which Jones stated he understood. Jones initially indicated he wanted to plead guilty to the simple assault charge and not guilty to the other two charges. At that time, the district court asked the State for its sentencing recommendation, and whether it would give Jones a deal if he pled guilty to the simple assault charge. The State indicated it was not willing to dismiss any of the charges, and stated its sentencing recommendation, on each count, would be "[o]ne year imposed; 180 days served; the balance suspended; one year of supervised probation[,]" along with fines and other conditions, if Jones pled guilty to all three charges. The district court advised Jones

it could sentence him anywhere from the minimum to maximum penalty. The district court informed Jones it was his choice whether to plead guilty or not guilty to the charges, and asked Jones how he wanted to proceed. Jones stated "I'll plead guilty to all three of them, Your Honor, just to get it taken care of[.]"

[¶ 4] The district court then asked Jones several questions. The court asked if he understood the State's recommendation, "the jail time and plus all the other conditions," to which Jones stated, "Yes, I do, Your Honor." The district court asked if he understood the three charges and if he understood the maximum and minimum penalties associated with the charges, to which Jones responded "Yes." The court asked if he understood the rights the court read earlier in the proceeding, and Jones responded "Yes, I do, Your Honor." Jones then pled guilty to all three charges. The district court then asked, "Sir, do you understand by pleading guilty to all three of these charges, for all three of these charges, you're then giving up all the rights the Court read to you earlier today?" Jones stated, "Yes, I do, Your Honor." The district court then stated:

> That includes for all three of these charges you're giving up your right to a jury trial, a trial of any kind on the matters, the right to confront and cross-examine witnesses, right to an attorney, and all the other rights the Court read to you earlier today. Are you voluntarily giving up those rights, sir?

Jones responded, "Yes, I am, Your Honor." The court then asked if he was voluntarily pleading guilty, to which Jones stated "Yes, I am, Your Honor."

[¶ 5] After hearing the factual basis from the State, the district court found it was sufficient to support Jones's "knowing and voluntary plea of guilty," and Jones "knowingly and voluntarily waived his rights, including his right to an attorney[.]" The State informed the court of Jones's criminal history, which included several convictions. Immediately before the court imposed its sentence, Jones asked, "It is suspended time, ain't it, Your Honor?" The district court then sentenced Jones to concurrent sentences of one year of imprisonment, with Jones to serve 120 days and the balance of time suspended for two years, on each count. Jones then asked if his sentence was suspended, to which the court stated "No, not all of it." Jones then indicated he misunderstood the State's recommendation and wanted to plead not guilty. The district court stated it believed the State was clear in its explanation, and the court had repeated it. Jones then stated he had a head injury and was on several medications. The district court then indicated it did not find a fair and just reason to allow Jones to withdraw his pleas, and the proceeding was adjourned.

[¶ 6] Jones retained private counsel and moved to withdraw his guilty pleas. A hearing was held on April 26, 2011. At the hearing, Jones testified he did not understand what was happening at the arraignment, and believed the State's recommendation had been for an all-suspended sentence. Jones testified several times that he would not have pled guilty if he had heard the sentence involved imprisonment. Jones testified he sustained a head injury in 1999 from which he suffered permanent brain damage, and was currently taking ten different medications. Jones stated he was not on his medications at the arraignment, he had not received medication for two days prior to the arraignment, and he didn't clearly understand the proceedings because of his brain injury and lack of medication. Regarding some of his previous convictions, Jones stated he pled guilty to all of his charges in 2009 and

2010, and he was represented by counsel when he pled guilty to those charges.

[¶ 7] The district court denied Jones's motion to withdraw his guilty pleas. The district court indicated it believed Jones had some cognitive impairment and he may be of a lower level of functioning, but this did not mean he could not make a free, knowing, and voluntary decision. The court also noted that, while there were some medical reports in the record, the court did not have a doctor's opinion to indicate Jones was not fit to proceed or unable to make a knowing and voluntary decision about pleading guilty. The court stated Jones seemed fit to proceed at the current hearing, and also seemed fit to proceed at arraignment. The court indicated it was comfortable Jones understood the proceedings because of the colloquy that took place pursuant to N.D.R.Crim.P. 11. The court noted that Jones was read his rights, the charges and possible penalties were explained, and Jones indicated he understood he was waiving his rights by pleading guilty. The court also noted that the State's recommendation was explained to Jones multiple times, and it understood Jones's references to all-suspended time to be requests for an all-suspended sentence. The court believed Jones's demeanor at the time of sentencing was angry and upset, but did not believe Jones was confused. The district court held Jones did not prove a manifest injustice, and denied Jones's motion to withdraw his guilty pleas.

## II.

[¶ 8] Rule 11(d), N.D.R.Crim.P., governs the withdrawal of a guilty plea. Under Rule 11, the standard for the district court's consideration of a request to withdraw a guilty plea differs depending on when the motion to withdraw the guilty plea is made. *State v. Lium*, 2008 ND 232, ¶ 11, 758 N.W.2d 711. A defendant may withdraw his or her guilty plea for any reason or no reason before the court accepts the plea. N.D.R.Crim.P. 11(d)(1)(A). A defendant may also withdraw his or her guilty plea after the court accepts the plea, but before sentencing, if the court rejects a plea agreement or if the defendant demonstrates a fair and just reason for the withdrawal. N.D.R.Crim.P. 11(d)(1)(B)(i)–(ii). "Unless the defendant proves that withdrawal is necessary to correct a manifest injustice, the defendant may not withdraw a plea of guilty after the court has imposed sentence." N.D.R.Crim.P. 11(d)(2). "The decision whether a manifest injustice exists for withdrawal of a guilty plea lies within the trial court's discretion and will not be reversed on appeal except for an abuse of discretion." *State v. Bates*, 2007 ND 15, ¶ 6, 726 N.W.2d 595 (quoting *State v. Abdullahi*, 2000 ND 39, ¶ 7, 607 N.W.2d 561). "A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or it misinterprets or misapplies the law." *State v. Pixler*, 2010 ND 105, ¶ 7, 783 N.W.2d 9.

## III.

[¶ 9] Jones argues the district court abused its discretion in denying his motion to withdraw his guilty pleas. Jones argues a manifest injustice existed to allow him to withdraw his pleas because: (1) he was not represented by counsel at his arraignment and the district court did not advise him of the dangers and disadvantages of self-representation before requiring him to enter his pleas; (2) he was confused by the State's sentencing recommendation; and (3) he previously suffered a traumatic brain injury which has caused him significant cognitive deficiencies.

## A.

[¶ 10] Jones argues the district court did not properly advise him of the

dangers and disadvantages of self-representation, and he did not voluntarily, knowingly, and intelligently waive his right to counsel.

[¶ 11] We review claims that a defendant's constitutional rights were violated de novo. *State v. Torkelsen*, 2008 ND 141, ¶ 41, 752 N.W.2d 640. A criminal defendant is guaranteed the right to counsel under the Sixth Amendment of the United States Constitution, and art. I, § 12 of the North Dakota Constitution. A defendant also has a corollary, implied right to self-representation under the Sixth Amendment. *Id.; Faretta v. California*, 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). A waiver of the right to counsel must be knowing, intelligent, voluntary, and unequivocal, and the defendant should be made aware of the disadvantages and dangers of self-representation. *Torkelsen*, at ¶ 41.

[¶ 12] In *Faretta v. California*, the United States Supreme Court held that a criminal defendant has a constitutional right to self-representation, but noted a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525 (quoting *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)). In *Patterson v. Illinois*, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988), the United States Supreme Court indicated that the stage of the criminal proceeding is relevant in determining the measures a district court must take to advise a defendant of the dangers and disadvantages of self-representation. In that case, Patterson argued he did not knowingly and intelligently waive his Sixth Amendment right to counsel before he gave uncounseled, post-indictment confessions. *Patterson*,

487 U.S. at 289, 108 S.Ct. 2389. The Supreme Court held that Patterson's waiver was valid because the *Miranda* warnings given to Patterson made him aware of his right to have counsel present during questioning and made him aware of the consequences of his decision to waive counsel. *Patterson*, 487 U.S. at 293–94, 108 S.Ct. 2389. The Court noted:

> [W]e have taken a more pragmatic approach to the waiver question—asking what purposes a lawyer can serve at the particular stage of the proceedings in question, and what assistance he could provide to an accused at that stage—to determine the scope of the Sixth Amendment right to counsel, and the type of warnings and procedures that should be required before a waiver of that right will be recognized. At one end of the spectrum, we have concluded there is no Sixth Amendment right to counsel whatsoever at a postindictment photographic display identification, because this procedure is not one at which the accused requires aid in coping with legal problems or assistance in meeting his adversary. At the other extreme, recognizing the enormous importance and role that an attorney plays at a criminal trial, we have imposed the most rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting him to waive his right to counsel at trial. In these extreme cases, and in others that fall between these two poles, we have defined the scope of the right to counsel by a pragmatic assessment of the usefulness of counsel to the accused at the particular proceeding, and the dangers to the accused of proceeding without counsel. An accused's waiver of his right to counsel is "knowing" when he is made aware of these basic facts.

*Id.* at 298, 108 S.Ct. 2389 (internal quotations and citations omitted). The Court further stated:

> [W]e require a more searching or formal inquiry before permitting an accused to waive his right to counsel at trial than we require for a Sixth Amendment waiver during postindictment questioning—*not* because postindictment questioning is "less important" than a trial ... but because the full dangers and disadvantages of self-representation during questioning are less substantial and more obvious to an accused than they are at trial. Because the role of counsel at questioning is relatively simple and limited, we see no problem in having a waiver procedure at that stage which is likewise simple and limited. So long as the accused is made aware of the "dangers and disadvantages of self-representation" during postindictment questioning, by use of the *Miranda* warnings, his waiver of his Sixth Amendment right to counsel at such questioning is "knowing and intelligent."

*Id.* at 299–300, 108 S.Ct. 2389 (emphasis in original) (internal quotations and citations omitted).

[¶ 13] The United States Supreme Court elaborated on the *Faretta* standard in *Iowa v. Tovar*, 541 U.S. 77, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004), noting:

> We have not, however, prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel. The information a defendant must possess in order to make an intelligent election, our decisions indicate, will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.

*Tovar*, 541 U.S. at 88, 124 S.Ct. 1379. The Court further stated, "Warnings of the pitfalls of proceeding to trial without counsel ... must be rigorously conveyed .... [but] at earlier stages of the criminal process, a less searching or formal colloquy may suffice." *Id.* at 89, 124 S.Ct. 1379.

[¶ 14] At issue in *Tovar* was whether the district court was required, beyond giving the defendant the opportunity to consult with counsel prior to entry of a plea and to be assisted by counsel at the plea hearing, to give two specific warnings prior to the entry of a plea: (1) that by waiving the right to counsel, the defendant takes the risk that a viable defense will be overlooked; and (2) that by waiving the right to counsel, the defendant will lose the opportunity to obtain an independent opinion on whether he or she should plead guilty. *Id.* at 81, 124 S.Ct. 1379. The Supreme Court found these warnings were not required, and noted they could be misconstrued as a suggestion that a meritorious defense exists, or lead the defendant to believe he or she could plead to a lesser charge. *Id.* at 81, 93, 124 S.Ct. 1379. The Court specifically held:

> [N]either warning is mandated by the Sixth Amendment. The constitutional requirement is satisfied when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea.

*Id.* at 81, 124 S.Ct. 1379. Subsequent analysis of *Tovar* and *Patterson* "has resulted in requiring less extensive warnings for the defendant who desires to waive counsel and enter a guilty plea than for the defendant who desires to waive[ ] counsel and proceed to trial representing himself." 3 LaFave, Israel, King, and Kerr, *Criminal Procedure*, § 11.3(a), at 679 (3d ed. 2007). When "the defendant ... desires to represent himself at trial (rather than to

simply plead guilty without a lawyer), the trial court should take special care to advise the defendant as to the pitfalls of self-representation." *Id.* at § 11.5(c), at 740.

[¶ 15] Rule 11, N.D.R.Crim.P., requires a district court to advise a defendant of certain rights prior to accepting a guilty plea, and this advice is mandatory and binding on the court. *State v. Farrell,* 2000 ND 26, ¶ 9, 606 N.W.2d 524. As part of this requirement, the district court must inform the defendant that he or she has the right to be represented by counsel at every stage of the proceedings and the right to have counsel appointed if he or she is indigent, and ensure the defendant understands these rights. N.D.R.Crim.P. 11(b)(1)(C).

[¶ 16] Here, the district court advised Jones and the others appearing of their constitutional rights, including their right to counsel, at the beginning of the hearing. When Jones appeared, he stated he was present when the court described his rights and he understood his rights. The court explained the charges against Jones and the maximum and minimum penalties associated with the charges, and Jones indicated he understood. Jones initially stated he wanted to plead guilty to the simple assault charge and not guilty to the charges of interference with a telephone during an emergency call and criminal mischief. After hearing the State's sentencing recommendation, Jones said he wanted to plead guilty to all three charges "just to get it taken care of[.]" Before Jones entered his pleas, the court asked him if he understood the rights he was read earlier, and Jones said he did. Jones then pled guilty to all three charges, and the following discussion took place:

> The Court: Sir, do you understand by pleading guilty to all three of these charges, for all three of these charges,

you're then giving up all the rights the Court read to you earlier today?

> The Defendant: Yes, I do, Your Honor.
> The Court: That includes for all three of these charges you're giving up your right to a jury trial, a trial of any kind on the matters, the right to confront and cross-examine witnesses, right to an attorney, and all the other rights the Court read to you earlier today. Are you voluntarily giving up those rights, sir?
> The Defendant: Yes, I am, Your Honor.

After finding a sufficient factual basis to support the charges, the district court then ordered the guilty pleas be entered and determined "[t]he defendant knowingly and voluntarily waived his rights, including his right to an attorney[.]"

[¶ 17] The district court complied with N.D.R.Crim.P. 11(b)(1) in advising Jones of his rights, which is in place to ensure "a knowing and intelligent waiver of counsel is made." N.D.R.Crim.P. 11, Explanatory Note. As required under *Tovar,* the district court advised Jones of the nature of the charges against him, of his right to an attorney, and of the range of punishments associated with the charges. *See Tovar,* 541 U.S. at 81, 124 S.Ct. 1379. Additionally, Jones appeared without counsel at an arraignment, an early stage in the criminal proceeding, which requires a less searching colloquy regarding the dangers and disadvantages of proceeding without counsel. *Id.* at 89, 124 S.Ct. 1379; *see* 3 LaFave, Israel, King, and Kerr, *Criminal Procedure,* § 11.3(a), at 679.

[¶ 18] Following the "pragmatic approach" outlined in *Patterson,* we consider the usefulness of counsel to Jones at the particular proceeding, and the dangers to him of proceeding without counsel. As in *Patterson,* Jones was advised of his right to have counsel present, and he was made aware of the consequences of proceeding

without counsel, i.e., he would waive all of the rights discussed prior to the hearing. *See Patterson*, 487 U.S. at 293–94, 108 S.Ct. 2389. As noted in *Tovar*, the district court was not required to advise Jones that a defense may exist, and in fact, such advice could have been misconstrued as a suggestion by the district court that a viable defense did exist. *Tovar*, 541 U.S. at 93, 124 S.Ct. 1379. The court was also not required to advise Jones that he would lose the opportunity to get an independent opinion on the wisdom of pleading guilty by waiving his right to counsel. *See id.* The early stage of the proceedings also indicates the district court's advisement was sufficient. *See Patterson*, 487 U.S. at 298, 108 S.Ct. 2389.

[¶ 19] Furthermore, we have considered a defendant's past involvement in the criminal justice system in determining whether the defendant understood the dangers and disadvantages of self-representation. *See State v. Dvorak*, 2000 ND 6, ¶ 21, 604 N.W.2d 445 (noting Dvorak was "an experienced criminal defendant, and his prior contacts with the legal system were sufficient to make him aware of the benefits of counsel and the dangers and disadvantages of self-representation."); *State v. Harmon*, 1997 ND 233, ¶ 23, 575 N.W.2d 635 (determining Harmon was aware of the dangers and disadvantages of self-representation at his jury trial based in part on his previous contacts with the criminal justice system). Jones has several recent convictions by guilty plea, and was represented by counsel in those cases. In 2009, Jones was convicted of simple assault (domestic violence), interference with a telephone during an emergency call, and violation of an order prohibiting contact; in 2010, he was convicted of menacing. Several of Jones's prior contacts with the criminal justice system have involved the same victim as the instant case. Jones has extensive experience with the criminal justice system, which alerted him to the benefits of counsel and the dangers and disadvantages of self-representation. We hold the district court sufficiently advised Jones of the dangers and disadvantages of self-representation at his arraignment, and the district court did not abuse its discretion in denying Jones's motion to withdraw his guilty pleas on this ground.

## B.

[¶ 20] Having concluded the district court adequately advised Jones, we now consider if Jones validly waived his right to counsel. In order to represent themselves, criminal defendants must voluntarily, knowingly, and intelligently waive the right to counsel. *Dvorak*, 2000 ND 6, ¶ 10, 604 N.W.2d 445. "[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it." *Tovar*, 541 U.S. at 92, 124 S.Ct. 1379 (quoting *United States v. Ruiz*, 536 U.S. 622, 629, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002)) (emphasis in original). Whether a defendant has waived his or her right to counsel and chosen self-representation "depends upon the facts and circumstances of each particular case, including the background, the experience, and the conduct of the accused." *Torkelsen*, 2008 ND 141, ¶ 42, 752 N.W.2d 640 (quoting *State v. Ochoa*, 2004 ND 43, ¶ 16, 675 N.W.2d 161). "Although we have not required trial courts to engage in a specific colloquy with a defendant who appears pro se, we prefer that trial courts eliminate any ambiguity about a waiver by making a specific on-the-record decision the defendant voluntarily, knowingly, and intelligently waived the

right to counsel." *Dvorak*, at ¶ 11. This preference parallels the principle that waiver of counsel will not be presumed from a silent record, and courts indulge every reasonable presumption against waiver. *Id.*

[¶ 21] At the arraignment, Jones pled guilty to the three charges, and the following discussion took place:

> The Court: Sir, do you understand by pleading guilty to all three of these charges, for all three of these charges, you're then giving up all the rights the Court read to you earlier today?
> The Defendant: Yes, I do, Your Honor.
> The Court: That includes for all three of these charges you're giving up your right to a jury trial, a trial of any kind on the matters, the right to confront and cross-examine witnesses, right to an attorney, and all the other rights the Court read to you earlier today. Are you voluntarily giving up those rights, sir?
> The Defendant: Yes, I am, Your Honor.

Prior to sentencing Jones, the district court specifically found "The defendant knowingly and voluntarily waived his rights, including his right to an attorney[.]" This specific, on-the-record determination helps eliminate any ambiguity that Jones voluntarily, knowingly, and intelligently waived his right to counsel. *Dvorak*, 2000 ND 6, ¶ 11, 604 N.W.2d 445. "[T]he test [for waiver of counsel] is not limited to what the trial court said or understood, the inquiry focuses on what the defendant understood." *Id.* at ¶ 16. At the motion hearing, the district court found that Jones did not seem confused and seemed fit to proceed at arraignment. The court indicated it believed Jones understood the proceedings because of the colloquy that took place pursuant to N.D.R.Crim.P. 11, and noted that Jones was read his rights, the charges and possi-ble penalties were explained, and Jones indicated he understood he was waiving his rights by pleading guilty. Jones's background and experience with the criminal justice system also support the finding that he waived his right to counsel. *See Dvorak*, at ¶ 21. We hold Jones voluntarily, knowingly, and intelligently waived his right to counsel at his arraignment.

[¶ 22] Jones argues he demonstrated his desire to have counsel appointed by filling out an application for indigent defense services. Rule 44, N.D.R.Crim.P., states that an indigent defendant is entitled to have counsel appointed to represent him or her at every stage of the proceeding unless the defendant waives that right. Jones filled out the application the day before the arraignment. The record does not reflect whether the application was filed with the district court prior to the arraignment hearing. Jones did not mention this application at the arraignment hearing. We conclude Jones voluntarily, knowingly, and intelligently waived his right to counsel, thereby also waiving his right to have counsel appointed by the court.

## IV.

[¶ 23] Jones argues a manifest injustice exists to require withdrawal of his guilty pleas because he was confused by the State's sentencing recommendation.

[¶ 24] At the beginning of the arraignment hearing, Jones and the other individuals appearing were advised "If the Judge does not follow the prosecutor's recommended sentence, you will not be allowed to withdraw your plea of guilty." For Jones's charges, the State recommended "[o]ne year imposed; 180 days served; the balance suspended[,]" if he pled guilty to all three counts. After hearing the recommendation, the district court informed

Jones, "[t]hat's what they'd recommend. I can sentence you anywhere from the minimum to the maximum." Jones then indicated he wanted to plead guilty to all three charges. The district court asked Jones if he understood the State's recommendation, "the jail time and plus all the other conditions," and Jones stated he understood. The district court then asked Jones if he understood the maximum and minimum penalties before accepting his pleas, and Jones stated he understood. Jones then asked "It is suspended time, ain't it, Your Honor?" The district court did not respond to this before sentencing him to a lesser sentence than the State recommended. At the motion hearing, the court found that Jones's references to suspended time were requests for an all-suspended sentence, not an indication that he did not understand the State's recommendation, and the court further noted that Jones did not seemed confused by his sentence, but seemed displeased by it.

[¶ 25] At the motion hearing, Jones testified:

I didn't understand. I thought that the prosecutor or the prosecutor said suspended jail time and the judge said two months. I remember him telling two months less than what the prosecutor says, but I didn't want—I thought he said suspend all jail time or I would have said—I would have plead not guilty.

. . . .

That's why I plead guilty, because I thought he said that he'll suspend all jail time, run it concurrent with the one I wanted to plead guilty to, and I want to plead not guilty to two of them.

. . . .

I heard the prosecutor say no jail time or suspend all jail time. That's what I heard or I would have plead not guilty. If I would have heard you say any jail time at all, I would have plead not guilty.

At the arraignment, Jones made no indication he could not hear the district court or the prosecutor. In denying Jones's motion, the district court stated it had listened to a recording of the arraignment, the record was clear, and he did not believe Jones's assertions that he could not hear what the prosecutor said. Jones's testimony at the motion hearing indicates that he did not want to plead guilty if his sentence included any jail time. However, Jones was advised that the district court was not bound by the State's recommendation, it could sentence him to a more severe sentence, and Jones indicated he understood. The district court did not abuse its discretion in finding that Jones heard and understood the sentencing recommendation and the sentence imposed.

[¶ 26] Jones argues his confusion at the State's sentencing recommendation is evidenced by the fact that he immediately moved to withdraw his guilty pleas after the sentence was imposed. A "swift change of heart after the plea" is not necessarily grounds for withdrawal of a guilty plea. *See United States v. Devins*, 646 F.2d 336, 336–37 (8th Cir.1981) (holding a swift change of heart after entering a guilty plea was insufficient to show the district court abused its discretion in denying the defendant's motion to withdraw his guilty plea); *United States v. Morrison*, 967 F.2d 264, 268 (8th Cir.1992) (holding "[a]n assertion of innocence—even a 'swift change of heart after the plea'—does not constitute a 'fair and just reason' to grant withdrawal."); *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir.1992) (noting the fact that a defendant has a change of heart after learning of the possible penalty is insufficient to allow withdrawal of a plea); *but see United States v. Barker*, 514 F.2d 208, 222 (D.C.Cir.1975) (noting "[a]

swift change of heart is itself strong indication that the plea was entered in haste and confusion[.]"); *United States v. Doe*, 537 F.3d 204, 213 (2d Cir.2008) (noting a swift change of heart after entering a plea may indicate confusion and haste in making the plea).

[¶ 27] Other courts have also recognized "if a plea of guilty could be retracted with ease *after* sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe." *Kadwell v. United States*, 315 F.2d 667, 670 (9th Cir.1963) (emphasis in original). "[T]he post-sentence withdrawal motion often constitutes a veiled attack on the judge's sentencing decision; to grant such motions in lenient fashion might 'undermine respect for the courts[.]'" *Barker*, 514 F.2d at 220 (quoting *Kadwell*, 315 F.2d at 670). "It is not a ground for reversal of a trial court's order refusing leave to withdraw a plea of guilty that the defendant did not know, when he entered his plea, that he would or might be subjected to a more severe sentence than he anticipated." *Friedman v. United States*, 200 F.2d 690, 696 (8th Cir.1952). In denying Jones's motion, the district court found that Jones requested an all-suspended sentence, and was displeased by the sentence he received because he did not want to be imprisoned. We agree with the *Kadwell* court that the defendant is not entitled to hear the sentence and then withdraw the guilty plea when he or she is displeased with the sentence. We conclude Jones's quick move to withdraw after entering his guilty pleas does not demonstrate the district court abused its discretion in denying his motion.

## V.

[¶ 28] Jones also argues a manifest injustice would occur if he is not al-

lowed to withdraw his guilty plea because he suffered a traumatic brain injury in 1999, which has caused significant cognitive deficiencies.

[¶ 29] This Court has recognized:

Some degree of mental disorder, however, does not necessarily mean that the defendant is incompetent or that the defendant's plea is not knowing and voluntary. *See United States v. Rodriguez–Leon*, 402 F.3d 17, 22–26 (1st Cir. 2005) (court did not plainly err in finding that the defendant, whose IQ was within the range of mild mental retardation and who suffered from brain dysfunction, was competent to enter a guilty plea and that the plea was voluntary, knowing, and intelligent); *Bailey v. Weber*, 295 F.3d 852[, 853] (8th Cir.2002) (defendant's guilty plea was voluntary and knowing, even though defendant was mildly mentally retarded); *Miles v. Dorsey*, 61 F.3d 1459, 1472–74 (10th Cir. 1995) (defendant was competent despite evidence he was of low intelligence and has a history of mental problems).

*Pixler*, 2010 ND 105, ¶ 10, 783 N.W.2d 9. Jones submitted several documents to support his motion to withdraw his guilty pleas. One item was a letter indicating that vocational rehabilitation was helping Jones find work as a grocery store bagger or janitor. A doctor's report stated Jones likely had a fifth or sixth grade writing level. Jones testified at the motion hearing that he has a seventh grade education. Jones also testified he has short term memory loss which improves when he is on medication. Jones stated he was prescribed twelve different medications, and he did not have his medication for two days prior to his arraignment.

[¶ 30] In denying Jones's motion, the district court stated it did not doubt Jones had cognitive impairment, but it did not believe it rose to the level of manifest

injustice requiring withdrawal of his guilty pleas. The court noted, although the record contained some medical reports, it did not have a doctor's opinion as to Jones's understanding of the proceedings or whether he could make a knowing and voluntary decision about pleading guilty. The court also stated there was insufficient evidence to indicate Jones's lack of medication made such a drastic difference so as to constitute a manifest injustice. The district court also referenced Jones's lengthy criminal history—several of Jones's convictions have occurred since his head injury in 1999. Jones has the burden of proving a manifest injustice necessitates the withdrawal of his guilty pleas. *Id.* at ¶ 6. Based on the record before us, we conclude the district court did not abuse its discretion in finding Jones failed to carry his burden.

### VI.

[¶ 31] We affirm the district court's order denying Jones's motion to withdraw his guilty pleas.

[¶ 32] CAROL RONNING KAPSNER, MARY MUEHLEN MARING and DANIEL J. CROTHERS, JJ., concur.

DALE V. SANDSTROM, J., concurs in the result.